UNITED STATES of America,
Appellee,

v.

Walter Joseph SCULLY, Appellant.

No. 723, Docket 31144.

United States Court of Appeals
Second Circuit.

Argued July 23, 1969.

Decided Sept. 15, 1969.

J. Daniel Sagarin, Asst. U. S. Atty., Jon O. Newman, U. S. Atty., for appellee.

W. Paul Flynn, Kopkind & Flynn, New Haven, Conn., for appellant.

Before WATERMAN and HAYS, Circuit Judges, and BARTELS, District Judge.*

WATERMAN, Circuit Judge:

Walter Joseph Scully was convicted on three counts of armed bank robbery, 18 U.S.C. § 2113(a), (b), and (d), following a jury trial in the United States District Court for the District of Connecticut. He was sentenced on Count 3 to a term of twenty years imprisonment plus a $5,000 committed fine, 18 U.S.C. § 2113(d). The imposition of sentence was suspended on Counts one and two. Alleging numerous pretrial and trial errors appellant attacks his conviction. We affirm the judgment below.

On the afternoon of July 24, 1963, a lone armed bandit, clothed in plaid shirt, blue jeans, and a straw hat, sporting a one half inch to one inch growth of beard, and wearing sun glasses, entered the Broad River Branch of the South Norwalk Savings Bank. Three people were in the bank at that time: The branch manager, Chester Boerum, a teller, Anne Gurnee, and a customer, Lawrence Saunders.[1] After entering the bank the bandit went over to Saunders, Boerum and Gurnee, ordered Gurnee to lie down on the floor, and, handing Boerum a bag, told him to fill it with money from the bank's cash drawers. Before fleeing with the bag the bandit told Boerum to give him three minutes get-away time, warning "I told you to give me three minutes the last time and you didn't * * * Don't try anything funny. I have a buddy up with your wife." The bank had been similarly robbed on May 6, 1963, hence the reference to "the last time."

At appellant's trial Special Agent Grooms testified that on September 23, 1963, as part of the official investigation of the bank robbery, he telephoned appellant Scully and told him that he

"* * * desired to interview him along with an official of the Norwalk Police Department, and that we were agreeable to coming to his home or that he could come to the Norwalk Police Department."

According to Grooms, Scully responded that

"* * * he desired to come to the Norwalk Police Department and would be there in a very short period of time * * *."

and indeed shortly thereafter appellant appeared at the police station to talk with the agent.

Grooms further testified that prior to interviewing appellant he introduced and identified himself and two police officers and he then advised appellant of his rights. Scully asked, "What do you want to talk to me about?" Grooms responded: "The robbery of the South Norwalk Savings Bank, Broad River Branch, both May 6, 1963, and July 24, 1963." No objection was made by Scully to being interviewed or to the proposed topic of conversation. During the interview, which allegedly lasted for three

---

* Of the Eastern District of New York, sitting by designation.

1. Although apparently available at the time of trial, Saunders was not called as a witness by either side.

hours, Scully told Grooms and the others that he had not been gainfully employed for a number of years before the robbery, that in July of 1963 he had purchased for cash a new car, costing over $2,000,[2] and that he had been in the robbed bank on one occasion and was familiar with the area. After this, when Scully refused to answer any more questions without having an opportunity to consult with his attorney, the interview was terminated and he walked out of the police station.

Unknown to Scully he had been observed for five to ten minutes during the interview by both Boerum and Gurnee through a one-way mirror. No positive identification was made at this time by either of the two observers. Both thought that Scully looked like the robber but he was clean shaven at this time and a blemish on his face was now observable which perhaps could have been covered by the actual bandit's growth of beard. In any event nothing more was apparently then done on the case or overtly done on it until the year 1966.

On May 24, 1966 a Commissioner's warrant was issued for appellant's arrest on a complaint charging him with robbing the South Norwalk Savings Bank, Broad River Branch, on July 24, 1963; and also for robbing it on May 6, 1963. Appellant was in Florida at this time and he voluntarily surrendered to local Miami authorities on July 14. A preliminary hearing was held in Miami on August 13. Boerum went to Miami where he, still having reservations about the facial blemish, identified with reasonable certainty Scully as the bank bandit. Chief Judge Dyer of the Southern District of Florida found probable cause to justify the arrest, and Scully was returned to Connecticut.

After arriving in Connecticut Scully was held in the New Haven County Jail.

He was not permitted to shave and when a sufficient growth of beard had developed he was placed in a police lineup with other unshaven individuals. The beard obscured the troublesome blemish and both Gurnee and Boerum positively identified the bearded Scully as the bank bandit. At trial these positive identifications were reiterated and reconfirmed.

The three count indictment returned by the federal grand jury only charged Scully with having committed the July 24, 1963 robbery of the Broad River Branch of the South Norwalk Savings Bank and did not charge him with the commission of the May 6, 1963 robbery. The jury found appellant guilty on all three counts.

█ Despite appellant's claim to the contrary, the thirty-four months which elapsed between the July 24, 1963 robbery and appellant's arrest pursuant to the May 24, 1966 warrant did not deprive him of his Sixth Amendment rights to the assistance of counsel and to a speedy trial, or deprive him of his Fifth Amendment right to due process. First, this claim was not made below at trial or before trial. Repeatedly we have stated that:

> Once a defendant has been arrested and charged, he should be under a[n] * * * obligation to give prompt notice of prejudice claimed as a result of pre-arrest delay; certainly the outside limit for such a claim is at trial, if not sooner. D'Ercole v. United States, 361 F.2d 211 (2d Cir. 1966) (per curiam). * * * United States v. Sanchez, 361 F.2d 824, 825 (2 Cir. 1966) (per curiam).

See also United States v. Feinberg, 383 F.2d 60, 67 (2 Cir. 1967), cert. denied, 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968); Chapman v. United States, 376 F.2d 705, 707 (2 Cir.), cert. denied,

---

2. At trial Louis Dvorsky, a government witness, testified that shortly before the robbery, on July 13, appellant had pawned his box of mechanic's tools for $15.00 and that he redeemed the tools after the robbery. Henry Perrault, another government witness, stated that just six days after the robbery appellant bought a new car, making a $140 deposit and returning later the same afternoon with a $2,193.55 cashier's check to cover the balance.

389 U.S. 881, 88 S.Ct. 119, 19 L.Ed.2d 174 (1967).

■■■ Second, even if we assume that the issue is properly before us on its merits, appellant has not sustained his burden and has not shown that "the delay has so impaired his capacity to prepare a defense as to amount to an infringement of his right to a speedy trial or a denial of due process." United States v. Capaldo, 402 F.2d 821, 823 (2 Cir. 1968). A delayed arrest does not in and of itself deny any constitutional rights. The Statute of Limitations is a citizen's primary guarantee protecting him from having to answer overly stale criminal charges. United States v. Ewell, 383 U.S. 116, 122, 86 S.Ct. 773, 15 L.Ed. 2d 627 (1966). If one is arrested within the time limits imposed by the applicable Statute of Limitations it is incumbent upon him to show that he suffered some significant prejudice as a result of any delay in the making of the arrest. In the instant case, after the 1963 interview with Special Agent Grooms and the Norwalk police, Scully certainly was aware that he was a prime suspect in the South Norwalk bank robbery. There can be little doubt that, as a result of the interview, the date and time of the robbery—a date and time for which he might be called in the future to account—was firmly fixed in Scully's mind. See United States v. Capaldo, *supra*. It is reasonable to assume that if there were any persons who could have materially aided Scully in establishing an alibi or could have testified that he was clean shaven during that week,[3] Scully would have located them, identified them, and would have noted them for possible future help.[4] All the Government's key witnesses were available to testify in 1966 and the events of the day of the bank robbery had remained clearly fixed in their minds. See United States v. Feinberg, *supra*, 383 F.2d at 66.

Before Special Agent Grooms began questioning Scully at the 1963 interview which, as we have noted above, took place inside the Norwalk police station, he warned Scully that

> \* \* \* he did not have to make any statement \* \* \* that any statement he made could be used against him in a court of law, and that he had the right to consult with his attorney or any attorney prior to making any statement \* \* \*.

These warnings, it is claimed by Scully, did not comply with the dictates of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and therefore he represents that the elicited incriminating statements made by him at that time to which Grooms testified were inadmissible against him at his October 1966 trial.[5] We do not need to reach the issue sought to be raised relative to the adequacy of the warnings.

■■■ The *Miranda* exclusionary rule does not apply to incriminating admissions made by a suspect during police interrogations unless the interrogated person who makes the incriminating statements is "in custody or otherwise deprived of his freedom of action in any significant way" when he makes the

---

3. Appellant called four witnesses in his behalf. Each testified that he was generally clean shaven. Some, however, could not remember how he looked on the particular day in question. This testimony was for the jury to weigh in the light of the testimony of the bank employees.

4. Salvatore Laudisi testified that appellant had approached him in October of 1963 attempting to procure an alibi for the days of the robberies and had become angry when Laudisi refused to cooperate with him.

5. Although the incriminating statements were made in 1963, appellant's trial took place in October 1966 after the *Miranda* decision was announced on June 13 of that year. Thus the *Miranda* standards were applicable to any incriminating statements sought to be introduced at the trial, irrespective of when the statements were taken. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

incriminating statements. *Id.* at 445, 86 S.Ct. at 1612. If the interrogated individual is not in custody or otherwise deprived of his freedom of action in any significant way, the pressures and anxieties which the *Miranda* warnings are designed to neutralize and offset do not exist. See, generally, Kamisar, "Custodial Interrogation" Within the Meaning of Miranda, in Criminal Law and the Constitution 335–383 (Insti. Continuing Legal Ed. 1968). Appellant was not compelled by the police to go down to the stationhouse for questioning. Compare United States v. Feinberg, *supra*, 383 F.2d at 63–64. He was offered the option of having the police talk with him at his home or, if he preferred, he could go to the police station and talk with Grooms and the officers there. He decided to go to the station. Upon his arrival he was made aware of the fact that he was a robbery suspect, perhaps a prime suspect, but it is quite apparent that he was not made to feel that he was under any obligation or under any police pressure to answer questions, or that he would be forced to remain in the station until the officers completed their investigation of him. The uncontroverted facts are that when Scully felt that he had said all he safely dared to say, he refused to answer any more questions about the robbery or his personal life and habits without first consulting an attorney, terminated the interview, and freely walked out of the station.

Under these circumstances, inasmuch as appellant as manifested by his actions did not believe that he was in custody or otherwise deprived of his freedom of action in any significant way, we hold that the interviewing police were not required to give him the *Miranda* warnings, see, generally, Kamisar, *supra* at 364, and therefore statements obtained at this 1963 interview were properly admitted into evidence against Scully at his trial.

■ The police procedure in 1963 by which Gurnee and Boerum briefly observed Scully while he was in the interview room with Grooms and the Norwalk police officers is challenged as being so impermissibly suggestive in nature as to amount to a violation of due process. It is claimed that the in-court identifications by these two bank employees were so tainted by his earlier allegedly impermissibly suggestive observation that the in-court identifications should have been excluded. We do not agree. The 1963 police station viewing of Scully by Gurnee and Boerum was not, in the totality of circumstances there present, see Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), so impermissibly suggestive that the viewing gave rise to a substantial likelihood of irreparable misidentification. See *Id.*, United States ex rel. Rutherford v. Deegan, 406 F.2d 217 (2 Cir.), cert. denied, 395 U.S. 983, 89 S.Ct. 2145, 23 L.Ed.2d 771 (1969). In fact no positive identification of the clean-shaven Scully was made at this time. Positive identifications were only made when the procedurally perfect 1966 lineup was held at the State Jail in New Haven where, with counsel present, the bearded Scully was shown in a lineup with other bearded individuals. At this lineup the previously troublesome blemish on Scully's face was obscured by whiskers as it would have been on the face of the bearded bank robber at the time of the robbery. Gurnee's and Boerum's in-court identifications stemmed from this 1966 lineup.

Other claims raised by appellant Scully do not merit discussion here and are rejected.

Affirmed.