[L.A. No. 29770. In Bank. Dec. 28, 1970.]

GUY JONES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Richard S. Buckley, Public Defender, James L. McCormick, Keith Johns, G. Keith Wisot and Harold E. Shabo, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Evelle J. Younger and Joseph P. Busch, Jr., District Attorneys, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**WRIGHT, C. J.**—Petitioner seeks a writ of mandate to compel the respondent court to dismiss an information charging him with sale of heroin (Health & Saf. Code, § 11501), or, in the alternative, a writ of prohibition to prevent respondent court from proceeding with the prosecution. Petitioner moved to dismiss the information on the grounds that he had been denied his right to a speedy trial and that further prosecution of the action would deny him due process of law. After an evidentiary hearing, respondent court denied the motion.

Harry Andrews, a Los Angeles police officer, worked as an undercover agent in a narcotics "buy program" from January 26, 1968, to July 7, 1968. He testified that on May 7, 1968, he bought heroin from petitioner at 2110 East 102d Street in Los Angeles. Officer Andrews reported the incident to Curtis Fesler, another narcotics officer, and after the conclusion of the "buy program" the two officers searched for petitioner.

Officer Andrews searched for petitioner between the middle of June 1968 and early July 1968. On three occasions he went to the apartment where the sale allegedly occurred, but was unable to locate petitioner at that address. On one of these visits he met a woman who was present at the sale, but she stated that she did not know petitioner's whereabouts. Officer Andrews also had information that petitioner was living at 2103 East 102d Street in Los Angeles. He went to that address once but nobody answered the door. Officer Andrews also had information that petitioner was attending classes at the Community Skills Center in Los Angeles. He staked out the premises on two separate afternoons without success. He did not enter the center or talk to anyone there. He did not learn petitioner's last name until sometime after he had completed the above investigation and he took no further steps to locate him thereafter.

Officer Fesler searched for petitioner from early June 1968 to July 8, 1968. On June 7, 1968, he went to the Community Skills Center and told the director he was looking for a person by the name of Guy. Two other people were present at this time and one of them told Fesler petitioner's full name and gave his address as 2103 East 102d Street. One of them also said that petitioner had left the center shortly before Fesler arrived. Officer Fesler then told a Mr. Simmons that the person he was looking for "was involved in selling heroin to an undercover agent." On June 10, 1968, Mr. Simmons told petitioner that the police were looking for him, and thereafter petitioner telephoned Officer Fesler. The testimony was conflicting as to what was said. Officer Fesler stated that he told petitioner "you are involved in the sale of heroin," that he requested petitioner to come to the police station, and that petitioner said he would do so with his attorney. Petitioner stated that the officer asked him to come to the police station to discuss something about narcotics, but that he was not told that he was suspected of selling heroin. He did not say that he would come to the station. The evidence was also conflicting as to whether petitioner later told Mr. Simmons that he had in fact gone to the police station with his attorney. Officer Fesler concluded his search for petitioner on July 8, 1968. The case was thereafter turned over to another member of the police department, and nothing further was done to apprehend petitioner for a period of approximately 19 months.

Petitioner testified that he moved in July 1968 from 2103 East 102d Street where he had lived with his parents to 329½ West 89th Street, also in the City of Los Angeles, where he lived continuously until the time of his arrest. He left a forwarding address with the post office and with his parents when he moved. From November 1964 to June 1968 petitioner was on probation under the supervision of the Los Angeles County Department of Probation. Petitioner had also been employed by that department as a deputy probation officer aide for one year prior to his arrest.

A complaint and a warrant for petitioner's arrest were issued on July 8, 1968. Although the police knew petitioner's full name and address, they made no attempt to serve the warrant until the time of his arrest on or about February 16, 1970. The preliminary hearing was held on March 3, 1970, and petitioner was held to answer on the charge of sale of heroin. The information was filed on March 17, 1970, and petitioner's motion to dismiss the information for lack of prosecution was denied on April 2, 1970.

The trial court denied the motion to dismiss after finding that petitioner had actual knowledge that he was wanted by the police in regard to the alleged offense, had attempted to avoid "service of process," and had not demonstrated that the delay was unreasonable. Although there is evidence

that petitioner knew the police were looking for him early in June 1968, there is no evidence that he attempted to avoid arrest. Moreover, we believe the undisputed facts establish that the delay in arresting petitioner was unreasonable. On this basis we must determine whether petitioner was denied his right to a speedy trial.

"The Sixth Amendment to the United States Constitution provides in part: 'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . .' Article I, section 13, of the California Constitution states that 'In criminal prosecutions, in any court whatever, the party accused shall have the right to a speedy and public trial. . . .' (See also Pen. Code, § 686.) ■ The California provision for a speedy trial ' "reflects the letter and spirit of" the Sixth Amendment to the United States Constitution. . . .' (*People* v. *Wilson* (1963) 60 Cal.2d 139, 144 [32 Cal. Rptr. 44, 383 P.2d 452].)

■ "The right to a speedy trial is a 'fundamental right granted to the accused and . . . the policy of the law since the time of the promulgation of Magna Charta and the Habeas Corpus Act.' (*Harris* v. *Municipal Court* (1930) 209 Cal. 55, 60-61 [285 P. 699].) ■ The function of this vital constitutional provision is 'to protect those accused of crime against possible delay, caused either by willful oppression, or the neglect of the state or its officers.' (*In re Begerow* (1901) 133 Cal. 349, 354-355 [65 P. 828]; *People* v. *Wilson, supra,* 60 Cal.2d 139, 148.)" (*Barker* v. *Municipal Court* (1966) 64 Cal.2d 806, 810-811 [51 Cal.Rptr. 921, 415 P.2d 809].)

The Legislature has enacted various specific provisions implementing the constitutional right to a speedy trial. For example, Penal Code sections 799-801 impose limitations on the time for commencing criminal actions; Penal Code section 825 imposes a time limit within which a defendant must be taken before a magistrate; Penal Code section 739 imposes a time limit within which an information must be filed; and Penal Code sections 1381-1387 establish standards for the dismissal of an action for want of prosecution. Although none of the above legislative provisions deal with a prearrest delay, it does not follow that there is no remedy if such delay results in the denial of the right to a speedy trial. ■ As stated in *Barker* v. *Municipal Court, supra,* 64 Cal.2d 806, 812, "While the courts have regularly adopted and enforced legislative interpretation of the constitutional provision for speedy trial, the constitutional provision 'is self-executing.' (*Harris* v. *Municipal Court, supra,* 209 Cal. 55, 60.) '[I]t is not necessary to have specific legislation to carry into effect section 13 of article I. . . .' (*Rost* v. *Municipal Court* (1960) 184 Cal.App.2d 507, 511 [7 Cal.Rptr. 869, 85 A.L.R.2d 974].) The provisions of the Penal Code are merely ' "supplementary to and a construction of" the Constitu-

tion.' (*People* v. *Wilson, supra,* 60 Cal.2d 139, 145; *People* v. *Godlewski,* 22 Cal.2d 677, 682 [140 P.2d 381].)" It is thus unnecessary for petitioner, in asserting his constitutional right to a speedy trial, to rely on specific statutory provisions applicable to pre-arrest delays.

Three arguments have been advanced against holding that the right to a speedy trial applies to pre-arrest delays: (1) that a potential defendant who has not yet been arrested or formally charged is not an "accused" within the meaning of the constitutional provisions; (2) that the period between the commission of an offense and the initiation of prosecution is controlled exclusively by the applicable statute of limitations; and (3) that to impose the speedy-trial guarantee to pre-arrest delays would unduly hamper police investigation. The first of these arguments is inapplicable to the instant case, and we do not feel that the latter two are compelling.

*Reliance on the word "accused."* The Sixth Amendment to the United States Constitution and the California Constitution both provide only that an "accused" shall enjoy the right to a speedy trial. One interpretation is that a person does not become an "accused" until he has been publicly charged with a crime. Our own courts have followed this interpretation. "One does not become an 'accused' until the filing of a complaint or other charge." (*People* v. *Jordan* (1955) 45 Cal.2d 697, 708 [290 P.2d 484]; *People* v. *Aguirre* (1960) 181 Cal.App.2d 577, 580 [5 Cal.Rptr. 477].) It may be contended, however, that a person becomes an "accused" at an earlier time, when, for example, law enforcement agencies either decide to charge him with an offense or have a reasonable basis for doing so. Under this view a defendant could assert that an unreasonable delay prior to as well as such a delay after the filing of a formal charge violated his right to a speedy trial. We need not reach the merits of this argument, however, because in the instant case a complaint was filed and a warrant issued on July 8, 1968, approximately two months after the alleged offense and approximately 19 months before petitioner's arrest. Thus, even under the established rule, petitioner became an "accused" at the time the complaint was filed.

*The statute of limitations.* The argument has also been made that the guarantee of a speedy trial should not be applied to pre-arrest delays because the allowable period between the offense and initiation of prosecution is controlled exclusively by the applicable statute of limitations. ■ The statute of limitations, however, cannot be invoked to curtail the self-executing constitutional guarantee of the right to a speedy trial. Although the statute of limitations is the primary legislative guarantee against bringing overly stale criminal charges, it is not the sole guarantee. It imposes an outside limit on the initiation of a prosecution regardless of how justified the

delay may have been. It does not, however, preclude judicial inquiry into the constitutionality of delays which occur within that period. If such inquiry were foreclosed, it would mean that the Legislature has determined the minimum standards required by the right to a speedy trial, and that this determination is binding on the courts. The judiciary, however, is the final arbiter of the meaning of the constitutional guarantee.

*Effect on law enforcement.* The final argument advanced against application of the right to a speedy trial to pre-arrest delays is that it would unduly hamper police investigation. As noted by one commentator, "This position confuses two distinct issues. One issue is whether the right to a speedy trial applies to preprosecution delays; the other is whether a particular delay has violated that right. Obviously, an affirmative answer to the first issue does not necessitate an affirmative answer to the second. ■ Delays necessary for reasonable law-enforcement operations will not violate the right to a speedy trial. The conduct of law-enforcement officials would be affected only if they unreasonably delayed initiating a prosecution." (Schneider, *The Right to a Speedy Trial,* 20 Stan.L.Rev. 476, 493.) We believe that the need of law enforcement officials for additional time to continue their investigation (e.g., *Hoffa* v. *United States* (1966) 385 U.S. 293, 310 [17 L.Ed.2d 374, 386, 87 S.Ct. 408]; *People* v. *Archerd, ante,* p. 615 [91 Cal.Rptr. 397, 477 P.2d 421]), to search for the defendant, or to search for witnesses, et cetera, goes to the reasonableness of the delay, and not to whether the right to a speedy trial applies to such a delay.

Since in the instant case petitioner's right to a speedy trial came into play no later than the filing of the charge against him, and since no legislative implementation of that right has been violated, this court must balance the competing interests involved to determine whether petitioner has been denied his right to speedy trial. ■ The prejudicial effect of the delay on petitioner must be weighed against any justification for the delay. (*People* v. *Wright* (1969) 2 Cal.App.3d 732, 736 [82 Cal.Rptr. 859]; *People* v. *Alvarado* (1968) 258 Cal.App.2d 756, 759 [66 Cal.Rptr. 41].)

■ Petitioner was clearly prejudiced. The most obvious prejudicial effect of the long pre-arrest delay was to seriously impair his ability to recall and to secure evidence of his activities at the time of the events in question. "Delaying the arrest of the accused may hinder his ability to recall or reconstruct his whereabouts at the time the alleged offense occurred. As stated by the dissent in *Powell* v. *United States,* 352 F.2d 705, 710 [122 App.D.C. 229], 'The accused has no way of knowing, to say nothing of proving, where he was at the time and on the day the policeman says his diary shows he made a sale of narcotics to the policeman.'" (*People* v. *Wright, supra,* 2 Cal.App.3d 732, 736.) Although petitioner knew in June

1968 that the police suspected him of a narcotics offense, he did not know when or how they believed the crime was committed, and since at this stage of the proceedings the case has not been tried and he must be presumed to be innocent, we cannot assume that he knew the details of the crime charged from his commission of it. He was under no legal obligation to go to the police station, and his failure to appear cannot justify an otherwise unreasonable delay in apprehending him. Indeed the prejudice to his ability to reconstruct his activities at some unknown date before he knew he was suspected of some offense may well have been compounded by a false sense of security induced by the failure of the police to follow up the telephone conversation with him for 19 months. Petitioner was not in hiding and his whereabouts could have been discovered by a routine, uncomplicated investigation. In far less time than 19 months he could have reasonably assumed that the police no longer had an interest in him.

The delay was clearly unreasonable. It advanced no proper police purpose. The "buy program" was completed and formal charges had been filed. No additional witnesses were being sought, and petitioner could have readily been promptly located and arrested.

Unlike the situation in *People* v. *Wright, supra,* 2 Cal.App.3d 732, where no prejudice was shown from a justified four-month delay, in the instant case prejudice and unreasonable delay clearly appear, and we conclude that petitioner was denied his right to a speedy trial.[1]

The alternative writ of prohibition heretofore issued is discharged. Let a peremptory writ of mandate issue commanding respondent court to dismiss the action against petitioner.

Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

BURKE, J., Dissenting.—The majority hold that petitioner is entitled to have the charge against him for sale of heroin dismissed on the ground that he was denied a speedy trial as a result of the 19-month pre-arrest delay following the filing of the complaint. I cannot agree and instead concur with the action of the trial court in denying the motion to dismiss the information and of the Court of Appeal in denying the instant petition.

---

[1]Since we have concluded that petitioner was denied his right to a speedy trial, we do not reach his additional contention that the pre-arrest delay constituted a denial of due process. It should be pointed out, however, that a claimed denial of due process would be decided by the same approach, namely, balancing the effect of the delay on the defendant against any justification for the delay. Thus the impact of this decision cannot be avoided by merely delaying the filing of formal charges so that a particular defendant does not technically become an "accused" within the meaning of the constitutional guarantee of the right to a speedy trial.

The facts recited in the opening paragraphs of the majority opinion are substantially correct and need not be repeated here.

I note initially that the information was filed well within the applicable statute of limitations (Pen. Code, § 800), which "is usually considered the primary guarantee against bringing overly stale criminal charges." (*United States* v. *Ewell,* 383 U.S. 116, 122 [15 L.Ed.2d 627, 632, 86 S.Ct. 773].) Such legislative judgment is "clearly entitled to great weight in determining what constitutes unreasonable delay" (see *Dickey* v. *Florida,* 398 U.S. 30, 47 [26 L.Ed.2d 26, 37, 90 S.Ct. 1564] [concurring opinion]), although the statutory limits are not necessarily coextensive with the limits set by the federal speedy trial clause (see *Dickey* v. *Florida, supra,* 398 U.S. 30, 32, fn. 3, 37-38, 47 [26 L.Ed.2d 26, 29, 31-32, 37]) or by the California speedy trial guarantee.[1]

The majority in the instant case recognize some of the above principles but conclude that petitioner was denied a speedy trial because, according to the majority, he was prejudiced by the pre-arrest delay following the filing of the complaint and the delay was without justification. The majority state, "The most obvious effect of the long pre-arrest delay was to seriously impair his ability to recall and to secure evidence of his activities at the time of the events in question. . . ." The majority apparently assume such impairment as a matter of law, since there is no finding by the trial court or concession by respondent of such impairment. Whether there was such impairment manifestly is highly speculative even if petitioner had been unaware of the fact he was wanted for the crime until his arrest. And here, as the majority recognize "petitioner knew in June 1968 that the police suspected him of a narcotics offense [namely sale of heroin]." But, state the majority, he "did not know when or how they believed the crime was committed . . . ." The quoted statement, however, ignores an express finding by the trial court and certain evidence indicating petitioner did have such knowledge.

The trial court expressly found that petitioner "knew the police were seeking him with reference to the sale of heroin *on or about* . . . May 7th, 1968." (Italics added.) Officer Curtis Fesler testified that during his telephone conversation with petitioner during the latter part of June 1968 he

---

[1]The Sixth Amendment of the federal Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." The Sixth Amendment right to a speedy trial is enforceable against the states by virtue of the Fourteenth Amendment. (*Klopfer* v. *North Carolina,* 386 U.S. 213 [18 L.Ed.2d 1, 87 S.Ct. 988].)

Article 1, section 13, of the California Constitution provides, "In criminal prosecutions, in any court whatever, the party accused shall have the right to a speedy and public trial . . . ." (See also Pen. Code, § 686.)

told petitioner he was looking for him with reference to the sale of heroin.[2] Although Fesler did not recall telling petitioner the specific date of the sale, other evidence indicated petitioner knew the approximate date of the sale. Theodous Simmons, petitioner's counselor at the Community Skills Center, was asked, "Do you recall exactly what you told [petitioner on June 10, 1968] why the police were looking for him," and Simmons replied, "They had alleged that he was involved in the selling of heroin to an undercover agent . . . ." Simmons further testified that petitioner stated *"he was not involved and was acquainted with the man the police were looking for."* (Italics added.) From the italicized statement the trier of fact could reasonably infer that petitioner knew of the transaction referred to by Simmons and, in the absence of satisfactory proof that the transaction was one other than the May 7, 1968 sale testified to by Undercover Agent Harry Andrews, the trier of fact could properly conclude that petitioner had knowledge of that particular sale and was aware of the approximate date thereof. The foregoing testimony also shows that petitioner knew the police believed the sale was of heroin and was to an undercover agent and that, contrary to the majority's statement, he thus had some knowledge of "how [the police] believed the offense was committed." Furthermore, the trial court found, based on substantial evidence,[3] that petitioner falsely told Simmons that petitioner had gone to the police station with his attorney. From the fact petitioner lied in this regard the trier of fact was also warranted in inferring that petitioner had some knowledge of the crime and surrounding facts.

It thus appears that within less than five weeks of the crime petitioner knew he was being sought by the police for sale of heroin "on or about" May 7, 1968. There can be little doubt that as a result of such knowledge he knew he might be called upon in the future to account for his actions around that date and it is reasonable to assume that if there were any persons who might have aided him he would have noted them for possible future help. (See, e.g., *United States* v. *Scully,* 415 F.2d 680, 683.) Until the statute of limitations had expired, he could not safely assume that no information would be filed charging him with the crime.

The record further shows that undercover agent Andrews had no difficulty in recalling the sale of heroin by petitioner to him (see, e.g., *United*

---

[2]Petitioner denied that Fesler told him the police were looking for him for the sale of heroin; according to petitioner, Fesler asked him to "come in to talk to him concerning some narcotics." This conflict in testimony was, of course, for the trial court to resolve.

[3]Simmons testified that petitioner told him on June 24, 1968, that he reported to the police department with his lawyer. Petitioner denied having so reported, but the trial court did not believe him. Both Officer Fesler and petitioner testified that following the telephone conversation petitioner did not go to see Fesler.

*States* v. *Scully, supra,* 415 F.2d 680, 683; *United States* v. *Feinberg,* 383 F.2d 60, 66), and so far as appears the woman who was present at the sale was still available and might be able to identify the seller.

Under the circumstances in my opinion it appears that petitioner was not prejudiced by the pre-arrest delay. "[P]rejudice seems to be an essential element of speedy trial violations." (See *Dickey* v. *Florida, supra,* 398 U.S. 30, 53 [26 L.Ed.2d 26, 41] [concurring opinion].) Accordingly, petitioner has not been denied a speedy trial irrespective of whether there was any justification for the delay. I would deny the writ.

McComb, J., concurred.

The petition of the real party in interest for a rehearing was denied February 10, 1971.