[Crim. No. 11010. First Dist., Div. Two. Apr. 17, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES A. HUGHES, Defendant and Appellant.

## COUNSEL

Stender & Lapides, Stender, Lapides, Stender & Weinberg and Doron Weinberg for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Gloria F. DeHart and Alvin J. Knudson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TAYLOR, P. J.**—Defendant appeals from a judgment and sentence[1] entered on a jury verdict finding him guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (a)) and of attempted robbery (Pen. Code, § 664), while using a firearm (Pen. Code, § 12022.5). As we have concluded that he was denied his statutory and constitutional rights to a speedy trial, and the charges against him must be dismissed (*Strunk* v. *United States* (1973) 412 U.S. 434 [37 L.Ed.2d 56, 93 S.Ct. 2260]), it is not necessary to detail all of the facts or the other grounds urged on appeal.

The pertinent facts are as follows: On July 27, 1971, defendant was brought to San Francisco General Hospital where, after treatment, he was placed under arrest and never thereafter released from custody.[2] Defendant's first appearance for arraignment in municipal court occurred on December 7, 1971, 132 days after his arrest. Prior thereto, on November 24, 1971, his then counsel had moved in the municipal court for a dismissal on grounds of denial of defendant's right to a speedy trial; this motion was denied on December 7. On December 20, a preliminary hearing was held. On December 20, on the basis of the instant charges, defendant's parole was revoked, and he was returned to San Quentin Prison. On December 31, 1971, the information was filed. On January 10, 1972, defendant again demanded to be brought immediately to trial. On March 3, 1972, defendant was arraigned in superior court.

On March 21, 1972, defendant's counsel of record, William F. Ross, filed a motion to set aside the information pursuant to Penal Code section 995, partially based on the ground that defendant had been denied the right to a speedy trial. On March 30, 1972, defendant's 995 motion was denied. On the same date, defendant's trial was set for April 3, 1972, 130 days after his first demand.

To determine whether defendant was denied his right to a speedy trial, we begin with the applicable principles as summarized by our Supreme Court in *Jones* v. *Superior Court,* 3 Cal.3d 734[3] at pages 738 and 739 [91 Cal.Rptr. 578, 478 P.2d 10]: " 'The Sixth Amendment to the United States Constitution provides in part: "In all criminal prosecutions, the accused

---

[1]Hughes' notice of appeal also indicates that his appeal is from the sentence. Penal Code section 1237 provides that a sentence shall be considered a final judgment within the meaning of the section.

[2]The source of this data is the uncontroverted declaration under penalty of perjury of defendant's counsel, William F. Ross, alleged on information and belief.

[3]*Jones* involved the substantially different question of pre-arrest delay.

shall enjoy the right to a speedy and public trial. . . ." Article I, section 13, of the California Constitution states that "In criminal prosecutions, in any court whatever, the party accused shall have the right to a speedy and public trial. . . ." (See also Pen. Code, § 686.) The California provision for a speedy trial " 'reflects the letter and spirit of' the Sixth Amendment to the United States Constitution. . . ." (*People* v. *Wilson* (1963) 60 Cal.2d 139, 144 [32 Cal.Rptr. 44, 383 P.2d 452].)

" 'The right to a speedy trial is a "fundamental right granted to the accused and . . . the policy of the law since the time of the promulgation of Magna Charta and the Habeas Corpus Act." (*Harris* v. *Municipal Court* (1930) 209 Cal. 55, 60-61 [285 P. 699].) The function of this vital constitutional provision is "to protect those accused of crime against possible delay, caused either by willful oppression, or the neglect of the state or its officers." (*In re Begerow* (1901) 133 Cal. 349, 354-355 [65 P. 828]; *People* v. *Wilson, supra,* 60 Cal.2d 139, 148.)' (*Barker* v. *Municipal Court* (1966) 64 Cal.2d 806, 810-811 [51 Cal.Rptr. 921, 415 P.2d 809].)

"The Legislature has enacted various specific provisions implementing the constitutional right to a speedy trial. For example, Penal Code sections 799-801 impose limitations on the time for commencing criminal actions; Penal Code section 825 imposes a time limit within which a defendant must be taken before a magistrate; Penal Code section 739 imposes a time limit within which an information must be filed; and Penal Code sections 1381-1387 establish standards for the dismissal of an action for want of prosecution. Although none of the above legislative provisions deal with a pre-arrest delay, it does not follow that there is no remedy if such delay results in the denial of the right to a speedy trial. As stated in *Barker* v. *Municipal Court, supra,* 64 Cal.2d 806, 812, 'While the courts have regularly adopted and enforced legislative interpretation of the constitutional provision for speedy trial, the constitutional provision "is self-executing." (*Harris* v. *Municipal Court, supra,* 209 Cal. 55, 60.) "[I]t is not necessary to have specific legislation to carry into effect section 13 of article I. . . ." (*Rost* v. *Municipal Court* (1960) 184 Cal.App.2d 507, 511 [7 Cal.Rptr. 869, 85 A.L.R.2d 974].) The provisions of the Penal Code are merely " 'supplementary to and a construction of' the Constitution." (*People* v. *Wilson, supra,* 60 Cal.2d 139, 145; *People* v. *Godlewski,* 22 Cal.2d 677, 682 [140 P.2d 381].)' "

■  We turn first to Penal Code section 825 that provides: "The defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest, excluding

Sundays and holidays . . . ." The requirements of this section are applicable to arrests without warrant pursuant to Penal Code section 849. Although the People have failed to so argue, there is the threshold question of whether Penal Code section 825 is properly applicable to a defendant on parole. In *People* v. *Goss,* 193 Cal.App.2d 720 [14 Cal. Rptr. 569], decided in 1961, we held that Penal Code section 1381 was the governing statute. We then reasoned that the granting of parole does not change the status of a defendant as a prisoner within the custody of the Adult Authority (see also Witkin, Cal. Criminal Procedure (1963) § 314, p. 308). However, the continued validity of *Goss* has been placed in doubt by recent developments in the law of parole (*Morrissey* v. *Brewer,* 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593], decided June 29, 1972; *In re Foss* (1974) 10 Cal.3d 910 [112 Cal.Rptr. 649, 519 P.2d 1073]), and specifically by *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734] (cert. den., 400 U.S. 851 [27 L.Ed.2d 88, 91 S.Ct. 71]). In *Martinez,* our Supreme Court disapproved the search and seizure aspects of *Goss* and then quoted, at page 646, from *Rose* v. *Haskins* (6th Cir. 1968) 388 F.2d 91, 98, fn. 2: "Although past cases have sometimes declared that a parolee is in 'constructive custody' or 'without liberty,' '[f]ictions of "custody" and the like . . . *cannot change the reality of a parolee's conditional freedom and cannot affect the constitutional protections surrounding his interest in that conditional freedom.*' " (Italics added.)

We conclude, therefore, that defendant's Penal Code section 825 contention is properly before us. Our courts have consistently stated that delay of even a few days beyond the statutory requirements constitutes a violation of defendant's rights (see *People* v. *Stroble* (1951) 36 Cal.2d 615 [226 P.2d 330]; *People* v. *Speaks* (1957) 156 Cal.App.2d 25 [319 P.2d 709]; *People* v. *McDowell* (1962) 204 Cal.App.2d 734 [22 Cal.Rptr. 646]). In *People* v. *Powell* (1967) 67 Cal.2d 32 [59 Cal.Rptr. 817, 429 P.2d 137], our Supreme Court commented that a delay of only one day beyond the limits of section 825 ". . . 'violates a fundamental right of the arrested person and is in disobedience of the law.' " (P. 59.)

The instant case involved a delay of 132 days between the arrest and the arraignment, a clear violation of Penal Code section 825. The People, however, cite *People* v. *Lane* (1961) 56 Cal.2d 773 [16 Cal.Rptr. 801, 366 P.2d 57]. In *Lane,* the total time that elapsed between the arrest and the arraignment was seven days and the court held the delay was not unreasonable under the circumstances, as the defendant had been hospitalized until the day before arraignment, when the hospital authorities advised the police that he was well enough to appear in court. Here, defendant was discharged from the hospital approximately two months after his

arrest[4] and a delay of approximately 72 days between the arrest and arraignment remains, even assuming that defendant was, in fact, incapacitated for the entire length of his hospital stay. This 72-day period is far in excess of the 7-day period in *Lane* and the 10-day period in *People* v. *Taylor* (1967) 250 Cal.App.2d 367 [58 Cal.Rptr. 269] (cert. den., 389 U.S. 995 [19 L.Ed.2d 493, 88 S.Ct. 500]).

■ In any event, the record here indicates a clear violation of Penal Code section 1381. That section provides, in relevant part, that a person serving a term in state prison, against whom another criminal charge is filed during the time he is serving his sentence, has a right to have the new charge brought to trial within 90 days after written notice to the district attorney. If the action is not brought to trial within that period, the court, either on its own motion, on the motion of the district attorney, the defendant, or the director of corrections, *must* dismiss the charge.

In the instant case, while defendant did not submit a written notice to the district attorney, he did move in open court on *November 24, 1971,* to dismiss the action for denial of his right to a speedy trial. His motion fulfilled the purpose of section 1381 that the district attorney be provided "notice of the place of his imprisonment . . . and his desire to be brought to trial upon [said] charge. . . ." (*People* v. *Rowden* (1969) 268 Cal. App.2d 868, 871 [74 Cal.Rptr. 448]). Thus, defendant's trial did not begin until April 3, 1972, more than 130 days after his demand,[5] contrary to Penal Code section 1381.

■ Moreover, even apart from any specific statutory time requirements, it is evident that defendant's right to a speedy trial was denied. A period of *250 days* (over 8 months) elapsed between the time defendant was arrested and brought to trial. *People* v. *Simpson* (1973) 30 Cal.App. 3d 177 [106 Cal.Rptr. 254], held that a delay of eight or nine months in bringing a defendant to trial potentially violated the right to a speedy trial. *Strunk* v. *United States,* 412 U.S. 434 [37 L.Ed.2d 56, 93 S.Ct. 2260],

---

[4]Although the fact does not appear in the record, defendant claims that a special arraignment court in San Francisco General Hospital was available while he was hospitalized. Its existence is proclaimed in the local newspapers and we judicially notice the existence of this court as a matter of local knowledge (Evid. Code, § 452, subd. (g)).

[5]The People erroneously argue that there was a delay of only 84 days between defendant's subsequent January 10, 1972, demand pursuant to Penal Code section 1381, and the beginning of trial on April 3. The argument ignores the prior motion to dismiss of November 24, 1971, which serves the function of a formal section 1381 demand (*People* v. *Rowden, supra*).

involved a delay of 259 days between the return of the indictment and the arraignment. The United States Supreme Court reversed the conviction, even though the petitioner was himself responsible for a large part of the delay, and failed to show or claim that his defense was prejudiced thereby (*id.* at pp. 435-436 [37 L.Ed.2d at pp. 59-60]).

In *Strunk, supra,* the U.S Supreme Court relied on *Barker* v. *Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182]. Although *Barker* held on its facts that there was no deprivation of the due process right to a speedy trial,[6] the Supreme Court established four criteria to determine whether a given delay violates federal constitutional standards: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant" (*id.* at p. 530 [33 L.Ed.2d at p. 117]). Clearly, the length of the delay here was unconscionable, and comparable to delays that occasioned dismissals in other cases. Defendant's assertion of his right here was timely[7] and permits no inference that he did not wish to be brought to trial.

The reason for the delay is much less clear. Nowhere in the record before us does the prosecution's reason for delay in producing defendant or bringing the case to trial appear. Even assuming that the delay was caused by mere negligence, this factor alone does not render the delay constitutional. "A more neutral reason such as negligence or overcrowded courts should be weighed less heavily [than an intentional delay] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant" (*Barker* v. *Wingo, supra,* p. 531 [33 L.Ed.2d p. 117]).

We turn next to the question of whether the 132-day delay between defendant's arrest and arraignment and the 93-day additional delay between the filing of the information and the trial (a total of 225 days) was prejudicial. ■ Under the law of.this state, a defendant who raises the issue of speedy trial on appeal from the judgment (instead of by way of a writ prior to trial) must show that he was prejudiced by the delay (*People* v. *Wilson* (1963) 60 Cal.2d 139, 150-154 [32 Cal.Rptr. 44, 383 P.2d 452] (dictum); *People* v. *Salcido* (1968) 263 Cal.App.2d 1, 4 [69 Cal.Rptr. 193], cert. den., 393 U.S. 1102 [21 L.Ed.2d 795, 89 S.Ct. 902]).

---

[6]The court noted (in fn. 5 at p. 518 [33 L.Ed.2d at p. 110]) that Barker himself did not wish a speedy trial and had failed to object to a number of continuances requested by the prosecution.

[7]As indicated above, defendant raised the question as early as November 24, 1971, and continued to raise it at all stages of the subsequent proceedings.

In *Barker, supra,* the U.S. Supreme Court stated that among the factors constituting prejudice, the "most serious" is "the possibility that the defense will be impaired." "If witnesses die or disappear during a delay, the prejudice is obvious." (*Id.* at p. 532 [33 L.Ed.2d at p. 118].) At the trial here, defense counsel attempted to controvert the testimony of one of the prosecution's witnesses, Inspector King, by reference to the out-of-court statement of Herbertina Vaughn, "Sparkle," an eyewitness to the events giving rise to the charges against defendant. After objection by the district attorney, defense counsel informed the court that the witness was unavailable and her whereabouts unknown.[8] The People urge that the absence of this witness does not constitute prejudice as there were other witnesses present at the time of the events in question. However, the only other person present at the time of the events (in addition to the officers who testified) was Chester Snyder. The record does not reflect whether Snyder was available at trial; even if he had been, however, that would not lessen Ms. Vaughn's materiality as a percipient witness for the defense.

In *Barker, supra,* the court also pointed out that another interest of defendant that is served by the right to a speedy trial is the elimination of anxiety and concern (*id.* at p. 532 [33 L.Ed.2d at pp. 117-118]). In *Strunk* v. *United States, supra,* the court again recognized the important interest of a defendant in this regard. "The speedy trial guarantee recognizes that a prolonged delay must subject the accused to an emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial or of receiving a sentence longer than, or consecutive to, the one he is presently serving—uncertainties that a prompt trial removes. [Citations.] We recognize, as the Court did in *Smith* v. *Hooey,* that the stress from a delayed trial may be less on a prisoner already confined, whose family ties and employment have been interrupted, but other factors such as the prospect of rehabilitation may also be affected adversely" (*id.* at p. 439 [37 L.Ed.2d at p. 61]). It seems evident that a prisoner's efforts to rehabilitate himself might well be hampered by the knowledge that, no matter how exemplary a prisoner he might become, another trial awaited him at some undetermined time in the future.

In addition, the California Supreme Court in *Barker* v. *Municipal Court,* 64 Cal.2d 806, 813 [51 Cal.Rptr. 921, 415 P.2d 809], recognized that "Even the purpose of preventing undue imprisonment is of some concern to a California prisoner, because if he is promptly convicted of an

---

[8]Defendant included an affidavit by Harold Lipset, an investigator, stating that he attempted to locate Ms. Vaughn from February 15, 1972, until the end of March 1972, without success.

additional offense he may be sentenced to serve a term of imprisonment concurrently with the term already imposed (Pen. Code, § 669); if a defendant is brought to trial only after his sentence on another charge has been completed, the possibility of concurrent sentences is denied him." Thus, the other element of prejudice, oppressive pretrial incarceration, articulated by the Supreme Court in *Barker* is present here (*id.* at p. 532 [33 L.Ed.2d at pp. 117-118]). We can only conclude that defendant was prejudiced by the long, unexplained unreasonable delays between his arrest and arraignment and the information and trial.

We also note that in *Barker,* the U.S. Supreme Court said in language equally apt here, at pages 519-520 [33 L.Ed.2d at pages 110-111]: "In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes. It must be of little comfort to the residents of Christian County, Kentucky, to know that Barker was at large on bail for over four years while accused of a vicious and brutal murder of which he was ultimately convicted. Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation."

The only issue that remains for consideration is that of proper relief. In *Strunk, supra,* the U.S. Supreme Court ruled that in light of the policies which underlie the right to a speedy trial, dismissal must remain the only possible remedy (p. 439 [37 L.Ed.2d p. 61]). Given that the purposes served by the California constitutional provision, article I, section 13, are similar to those served by the Sixth Amendment,[9] we are of the opinion that the rationale of the remedy chosen by the court in *Strunk* applies with equal force to our own constitutional provision.

[9]The California provision for a speedy trial " 'reflects the letter and spirit of' the Sixth Amendment to the United States Constitution . . ." (*People* v. *Wilson, supra,* p. 144, fn. 2).

The case is remanded to the trial court with directions to vacate the judgment and dismiss the charges.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied May 17, 1974.