Filed 8/7/13  P. v. Rodriguez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E057722 |
| v. | (Super.Ct.No. SWF1100780) |
| GERMAN VALTIERRA RODRIGUEZ, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Dennis A. McConaghy, Judge.  Affirmed.

Paul E. Zellerbach, District Attorney, and Alan D. Tate, Senior Deputy District Attorney, for Plaintiff and Appellant.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

1

# I

## INTRODUCTION[1]

The People appeal from an order of the trial court dismissing a criminal complaint for violation of defendant German Valtierra Rodriguez's right to a speedy trial. When the trial court dismisses a case based on a violation of defendant's right to a speedy trial, we review for an abuse of discretion. (*Serna v. Superior Court* (1985) 40 Cal.3d 239, 251.)

The People assert that the trial court erred in finding actual prejudice and the court abused its discretion in dismissing the complaint. We conclude defendant demonstrated actual prejudice and the trial court did not abuse its discretion. We affirm the judgment.

# II

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Felony Complaint*

In October 2009, the victim first disclosed to a teacher that defendant had groped her when she was younger. Eighteen months later, in April 2011, the People filed a felony complaint against defendant alleging six counts in violation of section 288, subdivision (a), lewd touching of a child under 14, occurring between 2004 and 2008. An arrest warrant was issued in June 2011.

A year later, in July 2012, defendant waived formal arraignment and pleaded not guilty to all charges. In August and September 2012, defendant agreed to waive time.

---

[1] All statutory references are to the Penal Code.

*B. Defendant's Motion to Dismiss*

In November 2012, defendant filed a motion to dismiss for violation of the right to a speedy trial under the state and federal Constitutions. (§ 1050.) In reviewing the motion, we are limited by the parties' sparse submissions. The only evidence offered by defendant in support of the motion is defendant's declaration with exhibits attached to show his address in San Marcos in April and July 2010 and March 2011. In opposing the motion, the prosecution did not offer any evidence at all, only a memorandum of points and authorities containing unsupported factual assertions. Nevertheless, we set forth a summary of the information provided by the parties.

In the motion, defendant asserted that the victim, defendant's stepdaughter, reported in October 2009 when she was 14 that defendant had touched her inappropriately between the ages of 10 and 13, the years 2004 to 2008.

In an Riverside Child Assessment Team (RCAT) interview[2] in October 2009, the victim apparently described the following incidents. Defendant touched her on the leg in the car between 20 and 50 times. He tried to kiss her using his tongue when she was watching a movie. Once he massaged her back and near her breasts. He touched her breast and her body while playing in the swimming pool. He touched her buttocks while wrestling.

The victim finally spoke out after there was a discussion in one of her classes about a young woman being kidnapped and because she had a nightmare about defendant

---

[2] The recorded RCAT interview is not part of the record on appeal.

3

touching her sister. The victim did not want to participate in a pretext telephone call. After the victim's mother questioned defendant, whom she was divorcing, he admitted some conduct, which defendant denied was sexual.

In December 2009, an officer was able to locate defendant's sister's Oceanside address and his telephone number using Department of Motor Vehicle (DMV) records. The officer left a telephone message in English for defendant in February 2010. In January 2011, officers went to the Oceanside address but defendant's sister said he had moved. In February 2011, an officer left a telephone message in Spanish for defendant.

In March 2011, officers visited defendant's current San Marcos address on Richmar Avenue without contacting him and they left more telephone messages. The officers seemed to be hampered in their investigation by their incorrect assumption that defendant was in the country illegally. Possibly for that reason, they did not search for or could not locate his driver's license or social security number. They closed the case and returned it to the district attorney who filed the complaint in April 2011.

In actuality, defendant had lived at and paid taxes and bills at Richmar Avenue since 2009. His driver's license, issued April 23, 2010, shows that address. He had paid child support to his ex-wife since August 2009 and engaged in weekly visitation with their child.

Defendant was not in the country illegally. To the contrary, he had possessed a green card for many years. He first discovered the charges against him in May 2012 when he applied for citizenship and a background check disclosed the outstanding warrant.

4

In support of his motion to dismiss, defendant declared that he has a poor memory about the alleged incidents occurring between 2004 and 2008 and that other witnesses, not identified, also lacked clear memories. Therefore, he suffered prejudice and his right to a speedy trial was violated because he could not receive an adequate defense due to the loss of witnesses and fading memories regarding the events. In his reply, defendant also claimed he suffered prejudice because the evidence about what caused the victim to report to her teacher in October 2009 could not be reconstructed. Defendant further argued there was no reason why the police could not have contacted him in San Marcos in 2009 and afterwards because he had a driver's license and paid taxes and bills at the Richmar address in San Marcos.

In opposition, the People argued defendant had not shown actual and substantial prejudice because the statements of the victim and other witnesses, also not identified, were recorded in 2009 when their memories were still fresh. The People contended the delay was justified because the detectives could not find defendant for several years. The People also reasoned that defendant had constructive notice there could be a pending case against him because the victim's mother had confronted him about her daughter's accusations and obtained a restraining order. The People did not submit any factual support—in the form of declarations or other admissible evidence—for their excuse for the delay in prosecution.

At the hearing on defendant's motion, the court noted that defendant and the victim's mother were getting divorced at the time of the victim's disclosure in October 2009. The prosecutor argued that law enforcement had made numerous attempts to find

defendant in 2011. However, the prosecutor could not explain why defendant's driver's license could not be located through the DMV. The prosecutor conceded defendant probably did not know a complaint had been filed but she argued he should have known the police might be investigating him because his ex-wife had confronted him. The court described the prosecutor's argument as "a pretty giant leap." The prosecutor explained the People did not have the resources to pursue "every single warrant." She disputed that memories could fade significantly between 2008 and when defendant was arrested in 2012.[3]

Defense counsel observed that the proposed witnesses in the case—other than the victim—were the mother, the teacher, a school friend, neighbors, family members, and a brother. Except for the two pool incidents and the movie incident, the victim was vague about the frequency and detail of the other incidents. Defense counsel explained the prejudice, somewhat inarticulately, to defendant as follows: "[W]e have contacted one of the witnesses, the teacher of the initial accusation that was made. And I think that the circumstances surrounding the topic and the subject which is being discussed at the time is certainly at issue in this case, because the fact that she is a mandated reporter. And I think that even within the RCAT itself, the alleged victim is stating that she doesn't want any. It doesn't really affect her. And she didn't really want to go through the process in the first place because—and it appears to have been more of a process of the mandated reporting rather than whether the case itself is a legitimate case."

---

[3] The prosecutor's reference to 2011 instead of 2012 appears to be a mistake.

Defense counsel also disputed that police negligence or lack of manpower justified the delay of almost three years from the victim's disclosure to defendant's arrest.

The court commented, "it's difficult for a person who is innocent to say on August 1st of 2008, I didn't do that. You can make a general statement, I've never done this, but to specifically say, I was someplace else or whatever, it's difficult." The court also described law enforcement's efforts as "inept." The court finally concluded, "out of fairness, we have to be concerned about the time that elapsed before . . . charges were even filed, let alone before [defendant] was even notified . . . ." The court deemed it a "close" call but granted defendant's motion.

III

DISCUSSION

The subject crimes purportedly occurred between 2004 and 2008 but were not reported until October 2009. Eighteen months elapsed before the complaint was filed in April 2011 and another 15 months before defendant was arrested and arraigned in July 2012.

Under federal law, a defendant's Sixth Amendment right to a speedy trial rule comes into play only after the filing of the information or upon a defendant's arrest. (*People v. Martinez* (2000) 22 Cal.4th 750, 754-755, 760-762.) A federal claim of unreasonable preindictment delay is determined under a Fifth Amendment due process analysis. (*Id.* at pp. 760-761.) Federal due process requires "'dismissal of the indictment if it [is] shown at trial that the pre-indictment delay in [the] case caused substantial

7

prejudice to [the defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused.' [Citation.]" (*Id*. at p. 765.)

Under state law, "Delay in prosecution that occurs before the accused is arrested or the complaint is filed may constitute a denial of the right to a fair trial and to due process of law under the state . . . Constitution[]." (*People v. Catlin* (2001) 26 Cal.4th 81, 107.)

We employ a three-step analysis to determine if defendant's due process right to a fair trial has been violated because of delay in filing the complaint or his arraignment: (1) defendant must show that he has been prejudiced by the delay, whereupon (2) the burden shifts to the People to justify the delay, and (3) the court balances the harm against the justification. (*Jones v. Superior Court* (1970) 3 Cal.3d 734; *People v. Pellegrino* (1978) 86 Cal.App.3d 776.)

The California Supreme Court has indicated that this balancing analysis is to be applied only where the delay was purposeful and oppressive. (See e.g., *People v. Archerd, supra*, 3 Cal.3d at p. 640.) However, in *Scherling v. Superior Court* (1978) 22 Cal.3d 493, 507, the Supreme Court stated, "it makes no difference whether the delay was deliberately designed to disadvantage the defendant, or whether it was caused by negligence of law enforcement agencies or the prosecution." Additionally, "[n]egligence on the part of police officers in gathering evidence or in putting the case together for presentation to the district attorney, or incompetency on the part of the district attorney in evaluating a case for possible prosecution can hardly be considered a valid police purpose justifying a lengthy delay which results in the deprivation of a right to a fair trial."

8

(*Penney v. Superior Court* (1972) 28 Cal.App.3d 941, 953.)  Although delay may have been caused only by the negligence of the government, the prejudice suffered by a defendant may be sufficient when balanced against the reasons for the delay to constitute a denial of due process.  (*Scherling v. Superior Court, supra*, 22 Cal.3d at p. 507.)

*A. Actual Prejudice*

Having reviewed the record, we conclude the trial court did not abuse its discretion in granting defendant's motion to dismiss.  First, the trial court properly found, whether express or implied, defendant showed actual prejudice caused by the state's delay.  Prejudice may be shown by fading memory caused by lapse of time.  In *People v. Jones, supra*, 3 Cal.3d at page 740, the court found that the defendant was prejudiced by a 19-month delay, holding, "[t]he most obvious prejudicial effect of the long pre-arrest delay was to seriously impair his ability to recall and to secure evidence of his activities at the time of the events in question."  (*Ibid*; see also *People v. Hill* (1984) 37 Cal.3d 491, 497-498 [fading memory of prosecution witness can support showing of prejudice]; *Garcia v. Superior Court* (1984) 163 Cal.App.3d 148, 151 [faded memory of defense witness]; *Ibarra v. Municipal Court* (1984) 162 Cal.App.3d 853, 858 [even "minimal" showing of prejudice in form of defendant's fading memory sufficient to shift burden]; *People v. Pellegrino* (1978) 86 Cal.App.3d 776, 780 [faded memory of appellants after 17- to 24-month delay].)

In the instant case, the subject crimes purportedly occurred between 2004 and 2008 and defendant's arrest occurred nearly four years later in July 2012, 15 months after the complaint was filed in April 2011.  Defendant admits it is common for him to be

9

affectionate with his family members but he denies remembering specific instances cited by the victim and he clearly remembers never touching the victim with a prurient interest. As the trial court acknowledged, it is plausible defendant's memory has faded significantly. The delay could impair his ability to recall and reconstruct activities concerning the events in question. There may be no way of knowing or proving where defendant was during the days and times of the alleged touching. Furthermore, defendant had lost the ability to track down and secure the testimony of witnesses like his former neighbors or the victim's teacher to whom she confided.

During the hearing, the court's specific questioning about witnesses and the difficulty posed to a defense makes it clear that the court was making a finding of actual prejudice. Such a finding is supported by the vague nature of the conduct with which defendant is charged. Defendant apparently habitually touched the victim's leg while driving. He gave her a massage without touching her breast. During horseplay in the pool, he brushed against her twice, as well as touching her bottom while wrestling. Finally—and perhaps most inappropriately—he may have tried to kiss her. But five of the six kinds of incidents were ambiguous and capable of differing interpretations. If defendant were to face trial now in 2013, it will have been between five and nine years since the alleged crimes occurred, making it extremely hard to defend against them.

## B. Justification For Delay

Because defendant established and the court found actual prejudice, the next step is to consider the reasonableness of delay. In *Jones v. Superior Court, supra*, 3 Cal.3d 734, the state made efforts to locate the defendant, including going to his apartment on

10

three occasions, asking a woman at the location if she knew his whereabouts, obtaining information about a different address, going to that address and receiving no answer, obtaining information about where the defendant was taking classes and staking out the premises on two occasions, telling the director of the location where he took classes that law enforcement was looking for him, and speaking to the defendant in a telephone conversation. However, the court concluded although the defendant knew that the police suspected him of a narcotics offense, "he did not know when or how they believed the crime was committed, and since at this stage of the proceedings the case has not been tried and he must be presumed to be innocent, we cannot assume that he knew the details of the crime charged from his commission of it. He was under no legal obligation to go to the police station, and his failure to appear cannot justify an otherwise unreasonable delay in apprehending him. Indeed the prejudice to his ability to reconstruct his activities at some unknown date before he knew he was suspected of some offense may well have been compounded by a false sense of security induced by the failure of the police to follow up the telephone conversation with him for 19 months. Petitioner was not in hiding and his whereabouts could have been discovered by a routine, uncomplicated investigation. In far less time than 19 months he could have reasonably assumed that the police no longer had an interest in him." (*Id*. at p. 741.)

In the instant case, there was no evidence defendant knew there were charges pending against him. The police made one telephone call in 2010 and made a few more attempts to find defendant before the complaint was filed in 2011 but not after. The explanation that the police could not find a correct address for defendant was

11

contradicted by the record that shows he was identified as living in Oceanside and then San Marcos. When the complaint was filed in April 2011, defendant was living at the San Marcos address listed on his driver's license, he was paying taxes and child support, and still sharing visitation of his child with the victim's mother, who must have known where he lived. Nevertheless, the prosecution did not try to find defendant or notify him of the charges against him after the complaint was filed. In fact, defendant was only located fortuitously because he applied to be a citizen.

The prosecutor admitted defendant did not know about the charges. The prosecutor blamed the lack of police manpower but admitted that was not an excuse for failing to pursue a case or locate a suspect when a complaint has been filed. The People's weak investigation and prosecution suggest it was not a significant case.

The record shows the trial court did balance the prejudice to defendant against the justification for the delay, as well as considering the seriousness of the criminal charges. There was no valid police purpose warranting a delay of almost three years between the time of the initial report and the time of defendant's arrest, and a 15-month delay between the filing of the complaint and his arrest. The delay was prejudicial because defendant's memory had faded and he has lost contact with witnesses. Therefore, the trial court did not abuse its discretion in granting defendant's motion to dismiss.

IV

DISPOSITION

The trial court found actual prejudice to defendant and no justification for the delay in prosecution.  We conclude there was no abuse of discretion and affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

MILLER

J.