[Crim. No. 9953. Fourth Dist., Div. Two. Jan. 30, 1979.]

THE PEOPLE, Plaintiff and Appellant, v.
PAUL XAVIER SAHAGUN et al., Defendants and Respondents.

**COUNSEL**

Byron C. Morton, District Attorney, Sue F. De Gasperin and Jeff Prevost, Deputy District Attorneys, for Plaintiff and Appellant.

Robert D. Rudnick, Miller, Boyko & Bell, Roy Morrow Bell, Fletcher W. Paddison and F. Latimer Gould for Defendants and Respondents.

## OPINION

KAUFMAN, J.—The People appeal from an order of the Riverside Superior Court setting aside an indictment. The record discloses numerous errors, not the least of which was the court's deciding the principal question at issue on the basis of unsworn statements of defense counsel received *in camera,* outside the presence of the People's legal representative. Accordingly, the order will be reversed and the case remanded to the trial court for relitigation of the several questions involved in proper proceedings.

On February 22, 1978, the Grand Jury of Riverside County returned an indictment against defendants Sahagun and Gilboe charging them jointly in count II with grand theft (Pen. Code, § 487, subd. 1) on January 5, 1977, and in count III with trafficking in supplies bearing a registered trademark or tradename (Bus. & Prof. Code, §§ 14484-14491) on the same date; separately charging defendant Gilboe in count IV with receiving stolen property, a felony (Pen. Code, § 496), on or about January 1, 1977, and separately charging defendant Sahagun in count I with grand theft (Pen. Code, § 487, subd. 1) on December 29, 1976.

Although defendants assert that the incriminating evidence was obtained through an unlawful search and seizure and was therefore incompetent, they do not otherwise contend the evidence was insufficient to establish probable cause. Accordingly, the facts may be summarized as follows.

Environmentals, Incorporated is in the business of renting clean linens to hotels, motels, hospitals and similar institutions. Although its principal place of business is in Anaheim, it does considerable business in the Palm Springs area. Defendant Sahagun was employed as a route man by Environmentals. His duties included driving a truck loaded with fresh linen supplies over a designated route in the Palm Springs area, calling on specified contract customers of Environmentals and delivering to them linens from the truck. The customers would sign a receipt for the linens received by them. Sahagun would then drive the truck back to Environmentals. Theoretically, the total of the linens for which Sahagun had receipts from customers plus the linens remaining in the truck, if any, on his return would be equal to the total amount of linens with which the truck was loaded when he left to cover the route.

Mr. Howard Dickson, the plant manager for Environmentals, became suspicious that Sahagun was improperly disposing of linens because he was chronically short upon returning to the Orange County plant. On December 28, 1976, when Sahagun's truck was loaded, Dickson assured himself that the inventory of linens placed in the truck was correct and then locked the truck with new locks to which he had the only keys. The truck remained so locked until the morning of December 29. That morning Mr. Dickson unlocked the truck but kept the truck under his own personal observation until Sahagun drove it out the gate. When Sahagun returned with the truck that evening, the customers' receipts were tallied and the remaining linens on the truck inventoried. Some $1,100 worth of linens were unaccounted for, including 100 double-sized sheets, 280 large bath towels, 140 hand towels and 100 bathmats. In all, they made up some 14 bundles of linen that had been on the truck when it left the plant on the morning of December 29. All the missing linens had on them the registered trademark or tradename of Environmentals, as did all the linens rented by Environmentals to its customers.

On the evening of January 4, and the morning of January 5, 1977, Mr. Dickson engaged in the same procedures as he had on December 28 and 29 to ensure the accuracy of the inventory of linens on Mr. Sahagun's truck when it left the plant on January 5.

Defendant Gilboe was the proprietor of a hotel in Palm Springs known as the Holiday Lodge. He was a contract customer of Environmentals. The contract between Environmentals and Mr. Gilboe with respect to Holiday Lodge was renewed October 15, 1976, for a period of one and a half years. It contained a provision authorizing Environmentals' employees to enter the premises of Holiday Lodge during normal business hours for the purpose of taking a physical inventory "and or recovery of the items of linen rented." At an earlier time defendant Sahagun had been assigned a route that included Holiday Lodge as a customer to be serviced. However, on January 5, 1977, Mr. Sahagun's authorized route did not include the Holiday Lodge or Mr. Gilboe, and Mr. Sahagun was not authorized to deliver any linens to Mr. Gilboe or Holiday Lodge.

Mr. Oscar Perez was the production manager for Environmentals, Incorporated. At the direction of his employer he had attempted to follow Mr. Sahagun on his route on December 29 but had lost him. During the day of January 5, 1977, he observed at the Holiday Lodge the Environmentals truck, driven by Mr. Sahagun. He saw defendants Sahagun and Gilboe taking bundles of linens from the truck and putting

them into canvas laundry hampers. The hampers were the property of Environmentals, and Gilboe was not authorized to have them. Perez saw Gilboe and Sahagun push one of the laundry hampers inside an enclosure and put it inside an International Travel-All. He then saw defendants Gilboe and Sahagun being arrested, after which he and a man named Bill Biernat made a list of the linens belonging to Environmentals found at the scene. Some of the linens were in the hamper that Gilboe and Sahagun "were loading at the time," and some were inside the Travel-All, and the balance was inside a shed behind the building. In all, the linens recovered were worth approximately $6,000. .

In connection with Mr. Perez' testimony that some of the linens were found in "a shed behind the building," he was asked how he had gotten back there to do that and responded: "We walked through that door that Mr. Gilboe opened." He further testified that Mr. Gilboe opened the door at the request of Mr. Biernat, a security consultant for Environmentals.[1] Palm Springs Police Officer Gary Dean White testified that he and another officer named Jackson went to the Holiday Lodge on January 5, 1977, after being contacted by Bill Biernat, and there arrested defendants Gilboe and Sahagun. He further testified that Mr. Biernat asked Mr. Gilboe "to return the rest of his linen" and that in response Mr. Gilboe opened the gate to a yard area where the Travel-All van was sitting partially filled with linens. He also testified that Environmentals' truck was parked directly in front of the Holiday Lodge, that the side door of the truck was open and that a laundry bin was next to it with linens in it. Photographs depicting these things were exhibited to the grand jury as was a photograph of the shed at the edge of the yard area inside the gate that showed linen within it covered with a piece of plastic.

Mr. Lou Silver, an area manager for Environmentals, testified that as one of his duties he took inventories on a regular basis at all accounts in the desert area and that every time without exception that he attempted to take an inventory at Holiday Lodge he met with some type of opposition and frequently was not successful in making an inventory. On January 4, 1977, he attempted to take an inventory at Holiday Lodge but was unsuccessful because Mr. Gilboe was not on the premises and the manager stated she did not have a key to the storage area. He then got in touch with Mr. Gilboe and arranged to take an inventory the following morning January 5, 1977. When he took inventory that morning, the

---

[1]Apparently it is this observation, inventorying and recovery of Environmentals' linens at the premises of Holiday Lodge, that defendants contend constituted an unlawful search and seizure. (See discussion, *infra.*)

linens were all in two storage closets inside the lodge. He specifically asked Mr. Gilboe if there were any linens stored in any other area on the premises, "any type of reserve or whatever," and Gilboe replied positively "no." The inventory he took on the morning of January 5 disclosed an amount of linens appropriate for what Gilboe should have had. Finally, Mr. Silver testified that later in the day on January 5, he saw the storage shed and the Travel-All van with linens in them, that their location was altogether different from the linen closets where he had made his inventory earlier in the day, that he had no knowledge linens were being stored in the Travel-All van or the shed, and that "these were big quantities of linen."

Although the exact date is not disclosed by the record, defendants Sahagun and Gilboe were apparently arraigned on the indictment in due course.

On April 4, 1978, defendant Gilboe filed a notice of motion to set aside the indictment on the ground he had been indicted without reasonable or probable cause. (See Pen. Code, § 995, first subd. 2.) The basis for the motion was that "the evidence . . . considered before the grand jury is, as a matter of law, incompetent evidence . . . in that such evidence has been previously suppressed before a court of competent jurisdiction as seized in violation of defendant GILBOE's constitutional rights, and that such an exclusion of this evidence upon which the indictment is made, and any fruits of that evidence gained thereby, renders that evidence incompetent for any further legal purpose, including, but not exclusive to, the grand jury indictment herein involved." The notice of motion indicated that among other things the motion was made "on the file and preliminary proceedings excluding such evidence" in the case of People v. Gilboe, case No. 30510, in the Municipal Court of the Desert Judicial District.

On April 7, 1978, defendant Sahagun joined in defendant Gilboe's section 995 motion and filed as additional points and authorities a photocopy of points and authorities filed by him in the Municipal Court of the Desert Judicial District in case No. 30511, entitled People v. Sahagun, directed exclusively to the unlawful search and seizure issue and the right of Sahagun to assert such illegality based on a violation of defendant Gilboe's Fourth Amendment rights.

On April 11, 1978, the People filed points and authorities in opposition to the motion to set aside the indictment. In their statement of facts the People conceded that on January 17, 1977, felony complaints had been filed against defendants in the Palm Springs Municipal Court (Municipal

Court of the Desert Judicial District) charging defendants with substantially the same offenses arising out of the same incidents; that in those cases the defendants had filed motions to suppress evidence (Pen. Code, § 1538.5) which were heard by the magistrate immediately prior to the preliminary hearings on February 18, 1977; that the magistrate had ruled that there was an unlawful search and seizure and suppressed the evidence; and that when the matters were called for preliminary hearing the People chose to present no evidence, and the complaints against both defendants were dismissed by the magistrate. It was further stated that, as is borne out by the grand jury transcript, the grand jury was informed of these earlier proceedings and the magistrate's ruling when it returned the indictment against defendants on February 22, 1978. Citing subdivision (j) of Penal Code section 1538.5, the People contended in their points and authorities that the evidence presented to the grand jury was not rendered incompetent because of the ruling of the magistrate on the motion to suppress.

Defendants' motion was argued on April 14 and continued for further argument and ruling on April 20. On the date of the hearing defendant Gilboe filed a memorandum of points and authorities in opposition to that of the People, asserting for the first time that the one-year delay between the dismissal of the charges in the municipal court and the return of the indictment was unreasonable, prejudicial and constituted harassment by the district attorney. It was asserted that two months after the dismissal of the criminal proceedings in the municipal court, Gilboe had filed a civil action against Environmentals for defamation, trade libel, breach of contract and wrongful infliction of emotional distress and that "this second criminal action . . . is a direct product of pressure applied to [the prosecutor's office] by the defendants in the civil action. . . ." On the same day defendant Gilboe filed a supplemental memorandum of points and authorities in which he contended that the superior court was bound by the factual evidentiary rulings of the magistrate presiding at the suppression motion in 1977 (Gilboe's consent to the search), that the indictment constituted "benign harassment," that subdivision (j) of Penal Code section 1538.5 should be construed as containing an implied requirement that a new complaint be filed or an indictment be sought without unreasonable delay, and that by delaying one year in reinitiating the charges against him, the People had denied defendant Gilboe due process of law.

Accompanying the supplemental memorandum of points and authorities was a declaration by Gilboe's attorney stating that he and his law firm

represented Mr. Gilboe in the 1977 proceedings and had initiated an investigation into the events of January 5, 1977, on his behalf, that as part of the investigation, he "both telephonically and in person interviewed witnesses who revealed highly exculpatory testimony" favoring Mr. Gilboe and that since the indictment, "attempts were made to contact the foregoing witnesses who appear to be unavailable and reportedly are out of the court's jurisdiction." It was further averred that "This office initially pursued certain evidentiary leads relating to the offenses charged which likewise were exculpatory in nature. . . . As a result of circumstantial changes occurring during the last twelve months, this evidence is no longer available, but could have been pursued had defendant been made aware within a reasonable period of time of a reindictment. . . . [¶] Finally, this declarant is informed and believes that certain evidence formerly available to defendants has been destroyed which would have been exculpatory in nature, but which is unfortunately no longer available to the defense."

On the same day the district attorney filed a supplemental memorandum of points and authorities on behalf of the People, contending that the delay in seeking the indictment was justified by the need for the development of additional evidence by the prosecution, the illness and unavailability of witness Dickson for a number of months and the press of business before the grand jury which precluded presentation of the matter for several weeks. It was further contended that there was no adequate showing by the defendants that they had suffered any substantial prejudice or been denied due process of law by the delay. As exhibits to the supplemental memorandum of points and authorities, the People filed declarations by Deputy District Attorney K. L. Pike setting forth in some detail the steps taken by him in connection with the case between the dismissal in the municipal court and the return of the indictment. He declared, among other things, that he had set the matter for presentation to the grand jury on October 22, 1977, but felt required to postpone the presentation when he learned that witness Dickson had had a heart pacemaker installed and was unavailable to give testimony, that it was not until January 1978 that Dickson was able to give testimony and that thereafter the matter could not be presented to the grand jury until February 22, 1978, because of the preoccupation of the grand jury, primarily with 49 undercover narcotic and drug cases.

At the hearing on April 20, defendant Sahagun adopted all memoranda and supplemental memoranda of points and authorities filed on behalf of defendant Gilboe, and the parties presented their arguments along the

lines set forth in their respective memoranda of points and authorities. The position of the People with respect to the search and seizure problem and the effect of the magistrate's ruling on the motion to suppress made in superior court is epitomized by the following: "The People have not discussed the issue of consent, the 1538.5 issue presented to Judge Carroll [the magistrate], because it is not relevant at this point. . . . [¶] That is not jurisdictionally before the court. What is in the Grand Jury transcript, the evidence presented to the Grand Jury as a reviewing body, indicates a consent situation, as the court has pointed out. . . . [T]he testimony presented to the Grand Jury gives rise to a reasonable presumption of legality, and therefore the 995 before the court must be denied. . . ." And, again: "The question of the legal search and seizure I submit is not before the court. All that is before the court is a finding of probable cause from the transcript of the indictment." The district attorney pointed out that a motion to suppress under Penal Code section 1538.5 would be available to the defendants if the section 995 motion were denied.

In connection with the argument on the "speedy trial" or "prosecutorial delay—due process" issue, counsel for defendant Gilboe requested an *in camera* hearing to "relate to you the prejudicial effect that has been incurred upon us by this [prosecutorial delay]. I am highly reluctant, in fact I refuse to do it in open court, for the obvious reason that the corporate defendant [in the civil litigation] is . . . involved in this deeply. There is pressure being put on witnesses. . . ." Eventually, the court granted this request for an *in camera* hearing over the objection of the People that they would be unable to answer or rebut what was said *in camera* since they would have no knowledge of it.

The court then excluded the district attorney and all other persons from the courtroom except the court personnel, the defendants and their attorneys. No evidence was taken, but the attorney for defendant Gilboe proceeded to make a statement concerning some of the witnesses he had interviewed and the investigations he had made and then argued the prejudicial effect of the prosecutorial delay. His statement was somewhat disjointed and was interrupted by questions from the court and interspersed with argument. However, it is fair to say that he identified a number of persons with whom he or his law firm had had some communication and from whom he expected to be able to produce some evidence that (1) it was common practice in the hotel-motel industry in the Palm Springs area to "stockpile" supplies of linen during the tourist season and that this practice was known to and accepted by Environmentals, or (2) that it was common practice for Environmentals' route drivers

on the desert routes to switch routes and stops in order to aid each other in servicing the hotels and motels. Although few specific facts were stated with respect to the efforts that had been made to locate the witnesses now said to be unavailable, it was stated that several of the hotels and motels from which witnesses could have been obtained had changed hands, that the potential witnesses were no longer employed there and that a number of route drivers who might have been willing to give testimony had left the area or were otherwise unavailable. In addition, it was said that a gas station attendant known to the defense only by a common first name but who allegedly could give testimony conflicting with that of Mr. Biernat was unavailable because the station was sold and he left the area. It was also said that the defendants' recollections of the events had grown dim.

When the *in camera* hearing had been almost completed, the court stated: "Well, my feeling right now is that I ought not to hold this In Camera as confidential information. If I should elect to hold for your position, you are going to have to argue it on appeal; I'm sure they will take it up." At the conclusion of the *in camera* hearing, but prior to the district attorney's return to the courtroom, the court stated: "I'm not going to find this is confidential, if I rule for you, I'm going to make it available to the District Attorney, the testimony that was—or, the offer of proof, I should say, that was elicited from you gentlemen this morning." Thereafter proceedings again resumed in open court. The court asked whether any counsel had anything further to say. Counsel for defendant Gilboe argued a bit more. The district attorney, knowing nothing of what was said *in camera,* only reminded the court that the declarations of Deputy District Attorney Pike and Mr. Biernat indicated the steps that had been taken during the intervening year to garner needed evidence and present the matter to the grand jury.

The court then announced its ruling. The judge indicated that from his reading of the grand jury transcript, he could not find a valid consent on the part of Mr. Gilboe and that he believed there was an unlawful search and seizure because a search warrant should have been obtained "whether or not there was a consent." He further indicated, however, that the principal basis for his decision was the prosecutorial delay; that although he felt the "reasons for delay . . . are valid reasons to a large extent," he was convinced by the "offers of proof" made *in camera* that numerous witnesses important to the defense were now unavailable and "that the delay of what would be eventually 18 months . . . or even two years, is a delay that makes defense of the charges untenable." At the

conclusion of his remarks,[2] the judge stated: "I am going to order a transcript be made available to the District Attorney of the In Camera proceedings, which was solely offers of proof, but well taken ones. . . ."

The day of the hearing, April 20, a minute entry was made, reading: "Motion pursuant to 995 PC is granted."

On appeal the People contend (1) that the trial court abused its discretion in quashing the indictment on the basis of prosecutorial delay because the competent evidence on that issue clearly demonstrates that the prosecutorial delay involved was amply justified and discloses no substantial prejudice to defendants, singly or collectively; (2) that, in any event, the trial court deprived the People of their right to cross-examine witnesses, present rebuttal evidence and make meaningful argument by granting defendants an *in camera* hearing, attempting to weigh prejudice to the defendants against justification on the basis of the "offers of proof" received *in camera,* and deciding the issue on the basis of "evidence" presented ex parte; (3) that the ruling of the magistrate in the municipal court proceedings in 1977 did not render the evidence presented to the grand jury incompetent; and (4) that the trial court's conclusion there was an unlawful search and seizure is without support in the evidence presented to the grand jury.

Defendants contend[3] (1) that the court properly granted defendants an *in camera* hearing; (2) that the court's determination that the prejudice to defendants from the prosecutorial delay outweighed the evidence of justification is supported by substantial evidence; (3) that the right of the prosecution to reinstitute criminal proceedings is subject to the condition that proceedings be reinstituted without unreasonable delay and that the reinstitution of criminal proceedings against them constitutes harassment;

---

[2] In his remarks the judge indicated that he also considered several factors entirely inappropriate to the decision he was required to make. He stated in part: ". . . I think this is the kind of matter that can be fairly settled and decided in a civil case, and civil procedure. If there is any damage to the corporate defendant, the corporate defendant .will have the opportunity to recover in a civil procedure, and further find that there was undue delay on the part of the corporate defendant in this particular case to marshal the evidence for a protracted period of time . . . ."

[3] On appeal, defendant Sahagun has adopted the brief filed on behalf of defendant Gilboe. Inasmuch as the offenses charged against the defendants were not identical and, further, in view of the fact that the facts do not necessarily relate to one defendant in the same manner as to the other and that in the brief filed on behalf of defendant Gilboe the arguments are made on the basis of the facts as they relate to him, the procedure adopted by counsel would ordinarily pose some problems. Happily, however, the bases of our decision apply to both defendants alike, and the potential problems may be disregarded.

(4) that the trial court was bound by the factual findings regarding Gilboe's consent made by the magistrate at the suppression hearing in 1977; and (5) that, in any event, the trial court made an independent finding that Gilboe did not consent and that there was an unlawful search and seizure rendering the evidence before the grand jury incompetent.

### Unlawful Search and Seizure—Incompetent Evidence

Whether the trial court considered the transcript of the 1977 suppression motion in the municipal court or made an independent finding based solely on the grand jury transcript,[4] its conclusion that the evidence was incompetent because it was the product of an unlawful search and seizure was erroneous as a matter of law and can be accounted for only as a product of the misconceived urgings of defense counsel, first, that the trial court was bound by the ruling of the magistrate and, subsequently, citing *Jones* v. *Superior Court,* 4 Cal.3d 660 [94 Cal.Rptr. 289, 483 P.2d 1241], that while the magistrate's *ruling* was not binding, his factual determinations based on credibility assessments were. These contentions reflect the fundamental misconception that the trial court was in some way reviewing the magistrate's determination of the 1977 suppression motion. It was not.

It is, of course, true that where a felony prosecution is initiated by a complaint, the defendant may make a motion to suppress evidence on the basis of an unlawful search and seizure to be heard with the preliminary hearing (Pen. Code, § 1538.5, subd. (f)), that the magistrate's ruling on the suppression motion may be reviewed on a motion to set aside the information pursuant to Penal Code section 995 (see *Smith* v. *Superior Court,* 76 Cal.App.3d 731, 733 [143 Cal.Rptr. 109]; *People* v. *Sanchez,* 24 Cal.App.3d 664, 690, fn. 15 [101 Cal.Rptr. 193] [disapproved on another point in *People* v. *Martin,* 9 Cal.3d 687, 695, fn. 8 (108 Cal.Rptr. 809, 511 P.2d 1161)]) and that upon such review the superior court is bound by the factual determinations of the magistrate if they are

---

[4]It is asserted in the appellate brief filed on behalf of defendant Gilboe that the trial court was provided with a transcript of the motion to suppress and preliminary hearing in the municipal court on February 17 and 18, 1977. However, that assertion is quite outside the record. As we shall explain, it would have been improper for the trial court to consider the transcript of the prior proceedings in the absence of a stipulation of all parties, but the record does not indicate any request by defendants that the court take judicial notice of the suppression hearing transcript and so far as our reading of the reporter's transcripts discloses, the only time the suppression hearing transcript was mentioned, the trial court indicated it did not have that transcript before it. The court said: "As I recall the testimony at the Grand Jury hearing on the matter, there is some question in my mind from the testimony, and *I don't have the Preliminary Hearing transcript, so I don't know what was testified to there. . . .*" (Italics added.)

supported by substantial evidence (see *People* v. *Sanchez, supra*; *People* v. *Heard,* 266 Cal.App.2d 747, 749 [72 Cal.Rptr. 374]). It has even 'been suggested that this is true also in a motion to set aside an indictment under Penal Code, section 995 if all the facts relating to the search and seizure issue appear in the grand jury transcript.[5] (See *People* v. *Superior Court (Kusano),* 276 Cal.App.2d 581, 585 [81 Cal.Rptr. 42]; see also *Smith* v. *Superior Court, supra,* 76 Cal.App.3d 731.)

However, the review of the magistrate's ruling on a suppression motion afforded by Penal Code section 995 pertains to the ruling of the magistrate on a suppression motion in the same prosecution as that in which the section 995 motion is made, not in some earlier prosecution of the same charges. ■ When, as here, a first prosecution has been terminated as a result of the magistrate's ruling that the incriminating evidence was the product of an unlawful search and seizure and a determination that, excluding such evidence, the remaining evidence is insufficient to hold the accused to answer, the People may elect to refile the charges by complaint or to reinstitute criminal proceedings by grand jury indictment. (*People* v. *Bracamonte,* 15 Cal.3d 394, 399 [124 Cal.Rptr. 528, 540 P.2d 624]; *People* v. *Uhlemann,* 9 Cal.3d 662, 666 [108 Cal.Rptr. 657, 511 P.2d 609]; *People* v. *Combes,* 56 Cal.2d 135, 145 [14 Cal.Rptr. 4, 363 P.2d 4]; *People* v. *Podesto,* 62 Cal.App.3d 708, 720-721 [133 Cal.Rptr. 409]; see *People* v. *Belknap,* 41 Cal.App.3d 1019, 1030 [116 Cal.Rptr. 664]; Pen. Code, § 1538.5, subd. (j).[6]) When they do so, the reinstituted criminal proceedings constitute a second, separate prosecution. (*People* v. *Combes, supra,* 56 Cal.2d at pp. 144-145; see *People* v. *Godlewski,* 22 Cal.2d 677, 682-683 [140 P.2d 381]; *People* v. *Belknap, supra,* 41 Cal.App.3d at p. 1031; cf. *Bellizzi* v. *Superior Court,* 12 Cal.3d 33, 38 [115 Cal.Rptr. 52, 524 P.2d 148].) In the second prosecution, determinations made in the first, including a determination that the evidence resulted from an unlawful search and seizure, are not only not res judicata (*People* v. *Prewitt,* 52 Cal.2d 330, 340 [341 P.2d 1]; see *People* v. *Howard,* 62

[5]Since the proceedings before the grand jury are not adversary in nature and no motion to suppress on the part of the accused is authorized in such proceedings, it is most unlikely that all the facts concerning search and seizure would appear in the grand jury transcript. In the instant case, for example, the grand jury transcript contains no evidence of any unlawful search and seizure, although the district attorney did inform the grand jury that the magistrate had earlier granted defendants' suppression motion 'on the ground there had been an unlawful search and seizure.

[6]Penal Code section 1538.5, subdivision (j) reads in pertinent part: "If the property or evidence relates to a felony offense initiated by complaint and the defendant's motion for the return of the property or *suppression of the evidence at the preliminary hearing is granted, and if the defendant is not held to answer at the preliminary hearing, the people may file a new complaint or seek an indictment* after the preliminary hearing, *and the ruling at the prior hearing shall not be binding* in any subsequent proceeding." (Italics added.)

Cal.App.3d 1019, 1023 [133 Cal.Rptr. 505]; *People* v. *Podesto, supra,* 62 Cal.App.3d 708; *People* v. *Belknap, supra,* 41 Cal.App.3d at pp. 1030-1031), they are not even to be considered (see *People* v. *Uhlemann, supra,* 9 Cal.3d at p. 669; cf. *People* v. *Combes, supra; People* v. *Prewitt, supra,* 52 Cal.2d at pp. 339-340; *People* v. *Belknap, supra,* 41 Cal.App.3d at p. 1031) except to the extent they tend to demonstrate unlawful prosecutorial harassment (see *People* v. *Uhlemann, supra; People* v. *Godlewski, supra,* 22 Cal.2d at p. 683; *People* v. *Podesto, supra,* 62 Cal.App.3d at p. 721) or prosecutorial delay abridging the accused's right to speedy trial or fair trial (*Bellizzi* v. *Superior Court, supra,* 12 Cal.3d at pp. 38, 42, fn. 2; see *People* v. *Belknap, supra,* 41 Cal.App.3d at p. 1032).

If on remand to the trial court, defendants' motion to set aside the indictment is denied and the prosecution is to go forward, defendants will be entitled to challenge the validity of any search and seizure by a pretrial motion to suppress pursuant to Penal Code section 1538.5, subdivision (i). To this point, however, there has been no motion to suppress and no adversary proceeding for the ascertainment of the facts relating to the claimed unlawful search and seizure. ■ The proceeding in the trial court was a motion to set aside the indictment pursuant to Penal Code section 995. In determining that motion the trial court was limited to a consideration of the evidence contained in the grand jury transcript. (See *People* v. *Superior Court (Kusano), supra,* 276 Cal.App.2d at p. 585.) Even were it otherwise, the court could consider only competent evidence, and the transcript of the testimony at the hearing on the 1977 motion to suppress was hearsay, inadmissible unless qualified under Evidence Code section 1291,[7] or stipulated to by both parties. (See *People* v. *Baldwin,* 62 Cal.App.3d 727, 732-733, fn. 3 [133 Cal.Rptr. 427]; *Hewitt* v. *Superior Court,* 5 Cal.App.3d 923, 927-928 [85 Cal.Rptr. 493].) There is nothing in the record indicating that the witnesses who testified at the 1977 suppression motion are unavailable as witnesses now and the record discloses no stipulation by the People that the transcript of the 1977 hearing be received in evidence and considered by the trial court.[8]

[7]Evidence Code section 1291 sets forth an exception to the hearsay rule under which former testimony may be introduced against a party who was also a party to the action or proceeding in which the former testimony was given and had the right and opportunity to cross-examine the witness who gave the testimony provided that witness is unavailable as witness in the proceeding at which the former testimony is offered.

[8]For the transcript of the 1977 hearing to have been properly considered by the trial court, the People would have had to stipulate (1) that the motion to set aside the indictment also be considered a motion to suppress evidence on the basis of an unlawful search and seizure and (2) that the transcript of the 1977 hearing be received into evidence. The record contains no indication that the People entered into either

Defendants' argument that relitigation of the search and seizure issue is inefficient, uneconomical and burdensome is unavailing. The right of the prosecution to refile charges following a dismissal based on a magistrate's determination that a search and seizure was unlawful antedated the enactment of Penal Code section 1538.5. (See *People* v. *Belknap, supra,* 41 Cal.App.3d at p. 1030, and cases there cited; *People* v. *Prewitt, supra,* 52 Cal.2d at pp. 339-340.) When Penal Code section 1538.5 was enacted this procedure was incorporated into subdivision (j) of the section as one part of the overall legislative plan that neither the accused nor the prosecution in a felony case should be precluded from further litigating the search and seizure issue by the determination of the magistrate. (See Witkin, Cal. Evidence (2d ed. 1977 supp. to ch. II) §§ 71A, 71D, 71E, and 71F, pp. 20-21, 28-29, 37-43.) If the magistrate holds the accused to answer and, therefore, there will be an information filed in the superior court, either party aggrieved by the magistrate's ruling on the suppression motion is entitled to a de novo hearing in the superior court. (Pen. Code, § 1538.5, subds. (i) and (j).) If the magistrate grants the motion to suppress and the accused is not held to answer so that there will be no proceedings in superior court, the People's right to refile or seek an indictment is utilized as a means for relitigating the search and seizure issue. To this end subdivision (j) expressly provides that "the ruling at the prior hearing shall not be binding in any subsequent proceeding." (See fn. 6, *ante.*)

If the court properly restricted its consideration of the evidence to that appearing in the grand jury transcript, its finding that Gilboe did not consent, its conclusion that a search warrant was necessary and its conclusion that there was an unlawful search and seizure are all unsupported by the evidence and, indeed, contrary to the evidence.[9] To begin with, based on the evidence in the grand jury transcript, there was

---

stipulation. On the contrary, the record affirmatively shows that throughout the proceedings the district attorney attempted to persuade the court that the question of unlawful search and seizure was not properly in issue. (See also fn. 4, *ante.*)

[9]The assertion in the concurring opinion that the trial court based these conclusions on the transcript of the 1977 suppression hearing is unsupported by the record and is contrary to the express statements of the court shortly before and at the time it announced its conclusions. It said: "*I don't have the Preliminary Hearing Transcript, so I don't know what was testified to there. . . .*" (See fn. 4, *ante.*) Further: "*. . . and in reading the transcript of the Grand Jury Indictment procedures,* I can't find that there was a valid consent, from the testimony given. It would seem to me there was invasion of rights pursuant to the Fourth and Fifth Amendments. [¶] The defendant, Mr. Gilboe, should have been advised of what was going on, *and as I understand it from the transcript of the indictment proceedings,* he was never advised, at least clearly, of what was happening at the particular time, nor was he presented with a search warrant." (Italics added.)

no search or seizure by the police at all. The evidence is that all the linens taken from the linen hampers, the Travel-All and the shed were taken by Mr. Perez and Mr. Biernat, neither of whom were police officers. ■ The provisions prohibiting unreasonable searches and seizures in both the federal and California Constitutions apply only to conduct of the government and its agents, not that of private individuals. (*People* v. *McKinnon,* 7 Cal.3d 899, 911-912 [103 Cal.Rptr. 897, 500 P.2d 1097]; see *People* v. *Superior Court (Smith),* 70 Cal.2d 123, 128-129 [74 Cal.Rptr. 294, 449 P.2d 230].) There is no evidence in the grand jury transcript that either Biernat or Perez were acting as agents of the government in retrieving the $6,000 worth of Environmentals' linens improperly in Gilboe's possession. So far as is indicated, they were acting on behalf of Environmentals whose contract with Gilboe contained a provision specifically authorizing Environmentals' employees to enter the premises of Holiday Lodge during normal business hours for the purpose of recovering Environmentals' linen. The only evidence in the grand jury transcript of police involvement is that the police arrested Sahagun and Gilboe and assisted Biernat and Perez in recovering Environmentals' linens.

Secondly, there is no evidence whatever in the grand jury transcript on which a finding could be based that Gilboe did not consent to return Environmentals' linens as requested by Biernat and open the gate to permit Biernat and Perez to retrieve the linens. Having been caught right in the middle of unloading and storing on his premises a large quantity of Environmentals' linens he was not authorized to have, it is certainly not incredible that Gilboe would consent to retrieval of the linen by Environmentals' representatives.

Even were there evidence of a governmental search and seizure and evidence of nonconsent on the part of Gilboe, the court's conclusion that a search warrant was required based on its conclusion that Environmentals had known all about this situation for a number of days was ill-founded. It is true that Environmentals suspected Sahagun of unauthorized dealing in linens, but it did not know Gilboe was involved until Mr. Perez observed Sahagun delivering the unauthorized linens to Gilboe on January 5 immediately before the linens were "seized." There was probable cause to believe a felony was in progress; Environmentals' linen truck was still being unloaded and part of the linen was still in a linen hamper next to the truck in front of Holiday Lodge. ■ A search warrant is not an absolute prerequisite to a lawful search and seizure where exigent circumstances require immediate action, and a place such

as a yard may be subject to warrantless search under circumstances of less demanding urgency than are required to authorize a warrantless search of a house, office or similar structure. (See *People* v. *Dumas*, 9 Cal.3d 871, 882-883 [109 Cal.Rptr. 304, 512 P.2d 1208]; *People* v. *Westmoreland*, 58 Cal.App.3d 32, 49 [129 Cal.Rptr. 554].)

Finally, even if somehow it could be concluded that there was an unlawful search and seizure with respect to the linen in the shed, there would still be sufficient untainted evidence disclosed by the grand jury transcript to support the grand jury's finding of probable cause. From Mr. Sahagun's chronic shortages and the activities of Mr. Dickson on December 28 and 29, Sahagun was justifiably suspected of unauthorized dealing in linens. Mr. Gilboe and the Holiday Lodge were not on his route on January 5, and he was unauthorized to deliver any linens to Mr. Gilboe or Holiday Lodge on that date. Nevertheless he and Gilboe were seen by at least one eyewitness unloading a large quantity of linen from Environmentals' truck into hampers and putting it into the Travel-All inside the yard. None of this evidence was in any way tainted by any unlawful search and seizure. In addition, some of the linens being unloaded from Environmentals' truck by Gilboe and Sahagun were still in a hamper next to the truck outside Holiday Lodge and bore Environmentals' registered mark or name. This evidence was in plain sight and there could be no unlawful search or seizure as to it. (*People* v. *Block*, 6 Cal.3d 239, 243 [103 Cal.Rptr. 281].) All this evidence was more than sufficient to warrant a reasonable and strong belief that Gilboe and Sahagun had committed the offenses alleged to have been committed on January 5. The search and seizure on January 5, of course, would have no bearing whatever on the evidence of the events of December 28 and 29 on the basis of which Mr. Sahagun was charged in count I with grand theft.

### *Prosecutorial Delay*

The critical issues under this head relate to the propriety of the court's granting defendants an *in camera* hearing and the procedures thereafter employed. However, there are several preliminary problems that should be mentioned. The first is whether a motion to set aside the indictment under Penal Code section 995 is an appropriate vehicle for raising the issue of prejudicial prosecutorial delay. We have concluded it is not. However, as we shall explain, the problem is of no consequence in this case.

■ Penal Code section 995 provides that an indictment must be set aside: "1. Where it is not found, endorsed, and presented as prescribed in this code. [¶] 2. That the defendant has been indicted without reasonable or probable cause." Since proof of prejudicial prosecutorial delay does not establish either of the grounds for setting aside the indictment specified in Penal Code section 995 (see *Penney* v. *Superior Court*, 28 Cal.App.3d 941, 944 [105 Cal.Rptr. 162]), a motion pursuant to that section is inappropriate to place prosecutorial delay in issue.[10] It is now well established, however, that an accused may make a nonstatutory pretrial motion to set aside the information or indictment on the ground of prejudicial prosecutorial delay in connection with which both the accused and the prosecution are entitled to present evidence. (See, e.g., *Scherling* v. *Superior Court, supra,* 22 Cal.3d at pp. 496-497; *Jones* v. *Superior Court, supra,* 3 Cal.3d at p. 736; *Penney* v. *Superior Court, supra,* 28 Cal.App.3d at p. 944.) Although the motion originally made in the trial court was based exclusively on Penal Code section 995, ultimately the issue of prosecutorial delay was injected into the proceeding, and the People acquiesced in the litigation of the issue. Accordingly, we treat the motion below as having properly raised the issue of prejudicial prosecutorial delay.

Two other preliminary issues are raised in a section of defendants' brief asserting that "[i]n reinstituting charges pursuant to Penal Code section 1538.5(j), charges must be refiled without unreasonable delay, and the section cannot be utilized to harass a criminal defendant." One argument made is that the right of the People to reinstitute criminal proceedings under Penal Code section 1538.5, subdivision (j) should be

---

[10]We note the case of *People* v. *Wright*, 2 Cal.App.3d 732, 735 [82 Cal.Rptr. 859], which appears to indicate that if all of the facts necessary to establish prejudicial prosecutorial delay were developed at the preliminary hearing, a motion to set aside an *information* under Penal Code section 995 might appropriately be used to raise the issue of prejudicial prosecutorial delay because the accused would not have been "legally committed," thus establishing one of the grounds for setting aside an information specified in Penal Code section 995. We are troubled by that suggestion, for, assuming its theoretical accuracy, unless the issue were deliberately tried at the preliminary hearing, it would be unlikely that the People would have introduced into evidence all the evidence they might have with respect to justification for the delay or the absence of prejudice to the defendant. Under those circumstances, when would the People be afforded an opportunity to present their evidence? A section 995 motion is not intended to result in an evidentiary hearing; the court's consideration is generally restricted to the evidence contained in the preliminary hearing transcript or the grand jury transcript. (See *People* v. *Superior Court (Kusano), supra,* 276 Cal.App.2d at p. 585.) In our view, the preferable procedure is an evidentiary hearing on a nonstatutory motion to dismiss on the ground of prejudicial prosecutorial delay. (See, e.g., *Scherling* v. *Superior Court,* 22 Cal.3d 493, 496-497 [149 Cal.Rptr. 597, 585 P.2d 219]; *Jones* v. *Superior Court,* 3 Cal.3d 734, 736 [91 Cal.Rptr. 578, 478 P.2d 10]; *Penney* v. *Superior Court, supra,* 28 Cal.App.3d at p. 944.)

construed to be conditioned on the People's reinstituting proceedings within a reasonable time. Again, defendants' premise is faulty. ■ The right of the People to reinstitute criminal proceedings following a dismissal stemming from a magistrate's determination that the evidence resulted from an unlawful search and seizure is not derived from Penal Code section 1538.5, subdivision (j). As previously explained, this right of the People antedated the enactment of Penal Code section 1538.5 (see *People* v. *Belknap, supra,* 41 Cal.App.3d at p. 1030, and cases there cited; *People* v. *Prewitt, supra,* 52 Cal.2d at pp. 339-340) and when Penal Code section 1538.5 was enacted this recognized right of the People was simply incorporated into subdivision (j) of the section as a procedural device to insure that the People were not bound by the determination of a magistrate as to the legality of a search and seizure without an opportunity to further litigate the matter. The important point is, however, that the statutory construction urged is entirely unnecessary. ■ The right of the People to reinstitute criminal proceedings following dismissal of a complaint by a magistrate is subject to the limitation that the reinstitution of proceedings may not deprive the accused of the right to speedy trial or the due process right to a fair trial. (*Bellizzi* v. *Superior Court, supra,* 12 Cal.3d at pp. 38, 42, fn. 2; see *People* v. *Belknap, supra,* 41 Cal.App.3d at p. 1032.)

■ Defendants are correct in asserting that the right of the People to reinstitute criminal proceedings is subject to the further limitation that the accused may not be harassed by the repeated reinstitution of criminal proceedings on the same charges. (See *People* v. *Uhlemann, supra,* 9 Cal.3d at p. 669; *People* v. *Godlewski, supra,* 22 Cal.2d at p. 683; *People* v. *Podesto, supra,* 62 Cal.App.3d at p. 721.) However, although counsel for defendant Gilboe made a number of speculative statements about charges being reinstituted as a result of pressure from Environmentals, there is no substantial evidence of any such prosecutorial harassment of defendants in the case at bench, and the trial court did not purport to base its order granting the motion to set aside the indictment on that ground. On remand, defendants may litigate the question of harassment by moving to set aside the indictment on that ground.

We turn to the principal issues.

■ Whether the prosecutorial delay in this case be classified as precomplaint or postcomplaint there is no dispute as to the applicable law. Postcomplaint delay implicates the accused's right to speedy trial under article I, section 15 of the California Constitution (*Scherling* v.

*Superior Court, supra,* 22 Cal.3d at p. 504; *People* v. *Hannon,* 19 Cal.3d 588, 608 [138 Cal.Rptr. 885, 564 P.2d 1203]), whereas precomplaint delay implicates the accused's right to due process of law (*Scherling* v. *Superior Court, supra,* 22 Cal.3d at p. 505). However, "regardless of whether defendant's claim is based on a due process analysis or a right to speedy trial not defined by statute, the test is the same, i.e., any prejudice to the defendant resulting from the delay must be weighed against justification for the delay." (*Scherling* v. *Superior Court, supra,* fn. omitted; see *People* v. *Bradford,* 17 Cal.3d 8, 18 [130 Cal.Rptr. 129, 549 P.2d 1225]; *Bellizzi* v. *Superior Court, supra,* 12 Cal.3d at p. 42; *Jones* v. *Superior Court, supra,* 3 Cal.3d at p. 741, fn. 1; *Penney* v. *Superior Court, supra,* 28 Cal.App.3d at p. 952.)

The parties argue the merits of their respective positions as to justification for the delay, prejudice to the defendants from the delay and the propriety of the trial court's determination. We do not reach the substance of these arguments, for, as we shall explain, because of the erroneous procedures followed there was virtually no competent evidence of prejudice to defendants presented to the trial court, and the People were deprived of basic rights fundamental to a fair trial. On remand, the parties will have an opportunity to litigate the question of prejudicial prosecutorial delay on its merits in proper proceedings. Numerous cases discuss the factors relevant in weighing justification for prosecutorial delay against the prejudicial effects of such delay, and it is unnecessary for us to discuss those factors for the guidance of the trial court. (See, e.g., *Scherling* v. *Superior Court, supra,* 22 Cal.3d at pp. 505-506; *Bellizzi* v. *Superior Court, supra,* 12 Cal.3d at p. 38; *People* v. *Archerd,* 3 Cal.3d 615, 639-641 [91 Cal.Rptr. 397, 477 P.2d 421]; *Penney* v. *Superior Court, supra,* 28 Cal.App.3d at pp. 952-955.)

■ On the record before us the trial court's determination that the prejudice to the defendants from the prosecutorial delay outweighed the prosecution's justification therefor was clearly erroneous. Virtually no competent proof of any prejudice to either defendant was presented to the trial court. Counsel for defendant Gilboe executed a declaration, but its entire substance was no more than vague, general and conclusory statements to the effect that some unstated number of unidentified witnesses whom interviews revealed had "highly exculpatory testimony" favorable to defendant Gilboe "appear to be unavailable" and "reportedly are out the court's jurisdiction," that "certain evidentiary leads" pursued by counsel's office, exculpatory in nature, were "no longer available" "[a]s a result of circumstantial changes occurring during the

last 12 months," and that counsel was informed and believed "that certain evidence formerly available to the defendants has been destroyed which would have been exculpatory in nature. . . ." These vague assertions did not inform the court of the nature of any evidence destroyed, the identity of the "unavailable" witnesses, the nature of what their testimony would have been, when they became unavailable, or what efforts were made by the defendants to locate them or adduce equivalent testimony or evidence; nor did they disclose any facts indicating that these witnesses or this evidence would have been available had criminal proceedings been reinstituted within a short time—that is, that the loss of evidence and unavailability of witnesses was caused by the prosecutorial delay. Thus, the declaration of counsel was entirely inadequate to support a conclusion that the defendants were substantially prejudiced by the prosecutorial delay. By contrast, the declarations of Deputy District Attorney Pike and Mr. Biernat set forth in some detail their efforts to garner additional evidence, the steps taken to present the matter to the grand jury and some of the reasons for the delay in so doing.

It is readily apparent, as expressly stated by the trial judge, that the court's conclusion that prejudice to the defendants outweighed justification for the delay was based on the "offers of proof" made by counsel for defendant Gilboe in the *in camera* hearing. As we shall explain, both the granting of the request for an *in camera* hearing and the procedure thereafter followed were erroneous, but, in any event, no competent proof of any fact was presented at the *in camera* hearing. Counsel for defendant Gilboe made numerous statements, but he was not sworn as a witness and did not testify to any fact. Motions may be decided on the basis of factual affidavits or declarations under penalty of perjury. (See Code Civ. Proc., §§ 2003, 2009.) However, in the absence of a stipulation, and certainly without opposing counsel even being present, unsworn statements, even when made by counsel, do not constitute competent proof of facts that will support an order terminating a felony prosecution. In balancing the public interest in prosecuting crime against the rights of an accused in the context of prosecutorial delay, the trial court exercises " 'a delicate judgment.' " (*Penney* v. *Superior Court, supra,* 28 Cal.App.3d at p. 954.) In making this delicate judgment on the basis of counsel's "offers of proof," the trial court abused its discretion.

■ We come at last to the propriety of the court's granting defendants' request for an *in camera* hearing and thereafter, having concluded it was improper and unnecessary to treat the information received as confidential, proceeding to decide the matter without

disclosing to the People the information received *in camera* or affording the People an opportunity to question and explore the accuracy of the information or argue its significance or lack of significance or offer rebuttal evidence. In each of these respects, the trial court erred; the People were deprived of rights fundamental to a fair trial. The resulting order must be reversed.

It is unnecessary to decide in this case whether a court has the inherent power to grant a litigant an *in camera* hearing, excluding the other litigant party, and receive evidence for substantive purposes on an issue dispositive of the litigation.[11] If a court has such inherent power, its invocation would surely require a compelling showing of necessity and its exercise would be required to be supported by sound judicial discretion based on a recognition that exercise of the power virtually obliterates as to one party all of the basic and fundamental rights included in our concept of a fair trial: the right to be present during all important stages of the proceedings, the right to hear the testimony and see tangible evidence, the right to test the truth and accuracy of testimony by cross-examination, the right to present rebuttal evidence, and the right to be heard in meaningful argument.[12] The defendants made no showing of any compelling need for an *in camera* hearing in the case at bench. In requesting the *in camera* hearing to "relate to you the prejudicial effect that has been incurred upon us by this [prosecutorial delay]," the sole reason given for the necessity of an *in camera* hearing was: "I am highly reluctant, in fact I refuse to do it in open court, for the obvious reason that the corporate defendant [in the civil litigation] is . . . involved in this

---

[11]Defendants call our attention to *People v. Rutkowsky,* 53 Cal.App.3d 1069 [126 Cal.Rptr. 104], in which the court examined a number of prospective jurors "in camera." What defendants have either failed to recognize or failed to appreciate is that in the so-called "in camera" proceedings in *Rutkowsky,* the parties and their attorneys were not excluded from the courtroom; the examination was merely held outside the presence of the other prospective jurors. (53 Cal.App.3d at pp. 1073, 1074.)

Our attention is also called to the fact that Evidence Code sections 915 and 1042, subdivision (d) provide for *in camera* hearings under certain circumstances when the privilege is claimed not to disclose a trade secret or identity of an informer or other confidential official information. With respect to identity of an informer and other confidential official information, if the privilege is upheld, the court is required to "make such order or finding of fact adverse to the public entity bringing the proceeding as is required by law upon any issue in the proceeding to which the privileged information is material." (Evid. Code, § 1042, subd. (a).) We also observe that these statutory in camera proceedings relate to the production of specific items of evidence which in most cases will not be dispositive of the litigation.

[12]Incredibly, defendants assert that the People were deprived of no "statutory or constitutional" right by the *in camera* proceeding. We deem it unnecessary to cite any statutory or constitutional provision for the proposition that the People in a criminal prosecution have the rights enumerated in the text.

deeply. There is pressure being put on witnesses . . . ." Manifestly, the trial court abused its discretion, if any it had, in granting an *in camera* hearing and abrogating the right of the People to participate in the trial of the issue of prejudice on the basis of that showing of "need."

On appeal, defendants urge for the first time that the court might have properly granted their request for an *in camera* hearing for the purpose of preserving the confidentiality of Gilboe's attorney's work product, to avoid "the potential that privileged information could be revealed," and to prevent the prosecution from utilizing "the 995 hearing as a discovery tool in order to learn defendant's trial strategy." It would be inappropriate for us on this appeal to attempt to answer the question whether any or all of these newly asserted bases might have been sufficient to support the granting of an *in camera* hearing. ▮ It is the general rule that issues not raised in the trial court will not be considered for the first time on appeal. (See *Lemelle* v. *Superior Court,* 77 Cal.App.3d 148, 159 [143 Cal.Rptr. 450], and cases there cited.) Application of the general rule is particularly appropriate here, for the immediate question is whether the trial court abused its discretion in granting defendants' request for an *in camera* hearing, assuming it had the power to do so. It would be ludicrous to attempt to review for abuse an exercise of discretion based on contentions the trial court did not consider. There is no likelihood these questions will arise on remand, for after the trial court made and announced its decision, a transcript of the *in camera* proceeding was prepared, supplied to the district attorney and included in the record on appeal. The information having been made public, there can be no further need for confidentiality, real or imagined.[13]

Although not separately asserted by the People, the trial court compounded its original error in granting the *in camera* hearing when, notwithstanding its realization during the hearing that there was no legitimate need for preserving the confidentiality of the information imparted to it, the court nevertheless proceeded to make its decision, based expressly on the "offers of proof" received *in camera,* without disclosing their content to the People and affording the People an opportunity to challenge the truth and accuracy of the statements made, present rebuttal evidence, and engage in meaningful argument.

---

[13] With respect to the notion that the People should not be permitted to utilize the hearing "discovery tool" to learn the defendants' trial strategy, we think it appropriate to point out that the motion to set aside the indictment on the basis of prejudicial prosecutorial delay was defendants' motion, and they had the burden of proof on the issue of prejudice. (See *Penney* v. *Superior Court, supra,* 28 Cal.App.3d at p. 953.)

## *Motion to Augment the Record*

On October 16, 1978, the same day the appellant's closing brief was filed, defendant Gilboe filed a written request to augment the record on appeal with partial reporter's transcripts of the 1977 suppression hearing in the municipal court (cases Nos. 30510 and 30511) and a request that we take judicial notice of those actions. Feeling that we could more knowledgeably rule on these requests in connection with our decision on the merits of the appeal, we reserved ruling. Inasmuch a the request for augmentation was not made until after all the briefs on appeal had been filed, and in view of our conclusion that if the trial court considered the evidence received at the 1977 suppression hearing it erred in so doing, the motion to augment the record on appeal is denied. (Cf. *People* v. *Prewitt, supra,* 52 Cal.2d at pp. 339-340.) Inasmuch as the partial transcripts were lodged with the clerk of the court at the time the request for augmentation was filed, they shall remain lodged with the clerk pending finality of this opinion, thereafter to be returned by the clerk to counsel for defendant Gilboe.

The fact that virtually the same criminal charges were prosecuted against defendants in 1977 in criminal actions Nos. 30510 and 30511 and the various facts set forth in this opinion as to the proceedings in those cases and their eventual disposition, including the fact that the magistrate found that Gilboe had not consented to the alleged search and seizure and concluded that there was an unlawful search and seizure, were admitted by the People in the documents filed by them in the trial court and are confirmed in their briefs on appeal. We therefore find it unnecessary to take judicial notice of the existence of those proceedings, and the request of defendant Gilboe that we do so is denied on that basis.

### DISPOSITION

The order setting aside the indictment is reversed and the case is remanded to the trial court for further proceedings. In view of the fact that the judge who presided at the hearing on the motion was exposed to the ex parte presentation of factual statements and argument relating to the vital factual issue presented by the motion, the hearing of any subsequent motion to terminate the prosecution on the basis of prejudicial prosecutorial delay shall be tried by another judge.

Gardner, P. J., concurred.

**MORRIS, J.**—I concur in the judgment.

I agree that the 1977 order suppressing the evidence and the resulting dismissal prior to the preliminary hearing did not preclude the refiling of charges, and that the ruling at the prior suppression hearing is not binding in any subsequent proceeding.

I also agree that the procedures followed in the *in camera* hearing denied the People one of the most fundamental rights essential to a fair trial: the right to be present during all important stages of the proceedings. The trial court specifically stated that "the controlling factor in the case is the delay." In my opinion, the denial of the right of the People to participate in the trial of the issue of prejudicial prosecutorial delay vitiated the entire proceeding, and requires a reversal of the order setting aside the indictment.

Therefore, I do not join in the majority's speculations about the legality of the search and the possible justification for proceeding without a search warrant.

The motion before the trial court pertaining to the search and seizure issue was a motion to dismiss pursuant to Penal Code section 995, on the ground that the evidence submitted to the grand jury was incompetent evidence on the theory that the 1977 ruling suppressing the evidence was binding in all subsequent proceedings. We have held that it was not. No motion to suppress evidence pursuant to Penal Code section 1538.5 was made in this case, and the transcript of the 1977 suppression hearing was not properly before the trial court and is not before this court.

As the basis for discussing the lawfulness of the search, the majority assumes that the trial court made an independent finding that there was an unlawful search based solely on the grand jury transcript. This is an unwarranted assumption. Although it is unclear whether the trial judge was ruling on the lawfulness of the search or on the competency of the evidence before the grand jury, it is clear that he considered the evidence produced at the 1977 hearing, as demonstrated by his concluding statement, "[I]f a search warrant had been obtained, there is no reason why there wasn't enough evidence to sustain binding this matter over to the Superior Court at the time Judge Carroll dismissed it." Judge Carroll presided at the 1977 hearing. Since the 1977 order suppressing evidence is not binding in this proceeding and the transcript of that hearing was not

properly before the court, findings predicated in part upon such evidence cannot be used as an independent basis to support the dismissal. Under these circumstances, speculations about the legality of the search can serve no good purpose.

If the case survives any subsequent motion to dismiss for prejudicial prosecutorial delay, the evidence on the lawfulness of the search may be fully presented in a motion under Penal Code section 1538.5.

A petition for a rehearing was denied February 20, 1979, and respondents' petitions for a hearing by the Supreme Court were denied March 29, 1979. Mosk, J., and Newman, J., were of the opinion that the petitions should be granted.